J. Steve Wallace and Lucy S. Wallace sued Robert P. Sholund, Inc. ("RPS"); Robert P. Sholund and Patricia H. Sholund; Frontier Bank, N.A. ("Frontier"); and Nicholas Lee and Tammy Lee in the Jefferson Circuit Court seeking to have set aside as a fraudulent conveyance a deed from RPS to the Sholunds and to declare a subsequent deed from the Sholunds to the Lees, and the Lees' mortgage to Frontier on the property conveyed by the deed, to be subject to the voiding of the earlier deed on the basis that the Lees and Frontier had actual and constructive notice of the fraudulent nature of the deed. The Lees filed an answer and counterclaim, asserting that they were "bona fide purchasers for value without notice . . . [who had] paid a value for consideration" for the property, using a $164,900 loan from Frontier secured by a mortgage on the property to purchase the property and to construct a house on it, and counterclaiming for money damages as a result of a notice *Page 794 
of lis pendens the Wallaces had recorded at the time they filed their action. Frontier separately answered and counterclaimed, asserting its status as "a bona fide mortgagee, having given sufficient consideration without notice of any competing claims or interest of plaintiffs," and contending that the Wallaces' claims were "barred by Alabama's recording laws." Frontier sought a judgment declaring the Frontier mortgage valid and superior to the Wallaces' claims and directing satisfaction and removal of record of the notice of lis pendens. After discovery was completed, Frontier and the Lees jointly moved for a summary judgment. The trial judge granted their motion on January 26, 2004, entering a summary judgment in their favor and, with their agreement, dismissing their respective counterclaims against the Wallaces. The Sholunds were dismissed as defendants, without prejudice, because they had filed a petition in bankruptcy and received a discharge in the bankruptcy proceeding and because "no relief [was] sought against them in this case." Noting that RPS remained as the sole defendant, the trial court certified its summary judgment for the Lees and Frontier as final pursuant to Rule 54(b), Ala. R. Civ. P. The Wallaces timely appealed. We affirm.
The following chronology of pertinent events is undisputed:
On November 15, 2002, the Wallaces recovered a $60,000 judgment against RPS. Over the course of December 11-13, 2002, four deeds were recorded in the Jefferson County probate office; those deeds conveyed from RPS to the Sholunds a total of five lots in Sherman Oaks, a subdivision. The lot at issue in this case, lot 30 of the survey of Sherman Oaks Subdivision ("lot 30"), was dated December 12 and recorded December 13.
On December 17, 2002, the Wallaces recorded in the Jefferson County probate office a certificate of judgment for the $60,000 judgment against RPS.
On January 8, 2003, the Sholunds executed a warranty deed conveying lot 30 to the Lees for a purchase price of $130,000. On January 10, 2003, the Lees signed a mortgage "conveying" legal title in lot 30 to Frontier, as mortgagee, to secure a $164,900 line of credit, of which $109,705.56 was stated to already have been advanced to the Lees. The "closing" of the Lees' purchase of the property did not take place until January 13, 2003, at which time a total of $187,404.94 was accounted for, including $109,705.56 devoted to paying off a prior mortgage encumbering lot 30. Among the closing costs paid by the Lees was $732 to Magic City Title, Inc., for title insurance. Magic City was the authorized agent for Lawyers Title Insurance Corporation ("Lawyers Title"), which on January 24 issued both an "owner's policy," insuring title to the property in the Lees, and a "loan policy," insuring Frontier's interest as mortgagee. The terms of each policy stated the policy was "a contract of indemnity against actual monetary loss or damage" arising from defects in the title, and both policies excluded coverage as to any
 "defects, liens, encumbrances, adverse claims, or other matters . . . not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy."
The deed to the Lees and the mortgage to Frontier were both recorded on January 24.
The Lees were not represented by counsel at the closing, and neither the "commitment" for title insurance issued by Lawyers Title in advance of the closing nor the subsequently issued policies referenced in *Page 795 
any way the Wallaces' judgment against RPS. Mr. Lee had not known Mr. Sholund before purchasing the Sholund lot, having met him, through a realtor, on only one occasion before the closing. (No evidence was offered as to whether Mrs. Lee knew either of the Sholunds, but the Wallaces do not argue on appeal that she knew either of them.)
Sometime in March 2003 the Sholunds voluntarily filed a petition in bankruptcy under Chapter 7 and received a discharge, with the result that the Wallaces advised the trial court in their "Memorandum Brief in Opposition to Defendants' Motion for Summary Judgment" that they were "seeking no relief whatsoever against them in this proceeding."
Although in 1989 the Alabama Legislature enacted the Alabama Uniform Fraudulent Transfer Act ("the AUFTA"), applicable to transfers made after January 1, 1990 (codified as §§ 8-9A-1
through -12, Ala. Code 1975), this Court and the Alabama Court of Civil Appeals have been called upon to interpret the AUFTA on only a few occasions and never with respect to the pivotal issue presented on this appeal. The Wallaces forgo any discussion of the AUFTA in their briefs to this Court, other than as follows: At page 18 of their initial brief, in connection with their argument that RPS was "arguably" insolvent when it deeded lot 30 to the Sholunds, they make the following general reference, "See §§ 8-9A-1 through 8-9A-7, Ala. Code 1975," and at page 10 of their reply brief, they assert that § 8-9A-10 supports their position that "in order for the Lees and Frontier to prevail, they have the burden of showing they were bona fide purchasers for value without notice." Section 8-9A-10 provides that, unless displaced by other provisions of that chapter, "the principles of law and equity, including the law merchant and the law relating to . . . fraud, misrepresentation, . . . insolvency, or other validating or invalidating cause, supplement its provisions." Rather than otherwise discuss the AUFTA, even though it is applicable in its entirety to the transfers at issue in this case, the Wallaces rely exclusively on pre-AUFTA caselaw. Accordingly, we are not called upon to consider whether the relationship between any of the provisions of the AUFTA, as applied to the facts of this case, might warrant different conclusions than those we reach upon consideration of the specific issues and arguments the Wallaces advance on appeal.
The Wallaces argue two main propositions in this Court. First, they contend that the deed from RPS to the Sholunds was a fraudulent conveyance. Second, they contend that the trial court erred in holding that the Lees and Frontier were bona fide purchasers for value. The Wallaces persuasively marshal facts justifying the conclusion that the deed from RPS to the Sholunds represents a fraudulent conveyance, but the Lees and Frontier suggest that the discussion of that issue is "wholly irrelevant," stating that they will assume that the December 12 transfer was indeed a fraudulent conveyance in order that the focus on appeal be only on those issues they say are relevant to this appeal, i.e., whether the Lees were bona fide purchases for value without notice and, if so, whether that status affords the Lees a complete defense to the Wallaces' claims. The parties do not separately discuss Frontier's status to any real degree, implicitly accepting that if the Lees qualify as bona fide purchasers for value without notice, Frontier, as their mortgagee, likewise qualifies.
The Wallaces do not argue that the interests of the Lees and Frontier would be affected by a fraudulent transfer from RPS to the Sholunds if the Lees and Frontier are due recognition as bona fide purchasers or mortgagee for value without *Page 796 
notice; rather, they consistently argue only, as stated in their reply brief:
 "In order for the Lees and Frontier to prevail, they have the burden of showing that they were bona fide purchasers for value without notice. The Lees and Frontier have not met this burden in that they have failed to establish that they had no notice and knew no facts sufficient to put them on inquiry as to another party's equity, either at the time of the purchase, or at or before the time they paid the purchase money or otherwise parted with such value."
In that regard, the Wallaces rely heavily on the cases ofFirst Alabama Bank of Tuscaloosa v. Brooker, 418 So.2d 851
(Ala. 1982); Murphree v. Henson, 289 Ala. 340, 267 So.2d 414
(1972); and Dewyer v. Dover, 222 Ala. 543, 133 So. 581 (1931). The following passage from Brooker states the principles of law the Wallaces rely on in that regard:
 "In order for the Bank to avail itself of the status of a bona fide purchaser or mortgagee for value, our authorities hold certain facts must be established clearly, distinctly, and without equivocation: (1) that it is the purchaser of the legal as distinguished from the equitable title; (2) that it purchased it in good faith: (3) that it parted with value as consideration therefor by paying money, or some other thing of value, assuming liability or incurring injury; (4) and that it had no notice, and knew no fact sufficient to put it on inquiry as to another party's equity, either at the time of the purchase, or at or before, the time it paid the purchase money or otherwise parted with such value. First National Bank of Birmingham v. Culberson, 342 So.2d 347 ([Ala.] 1977); Borden v. Case, 270 Ala. 293, 118 So.2d 751 (1960). Notice of a claim of interest in real property can be inferred from knowledge of facts sufficient to put a reasonably prudent person on inquiry, which if pursued, would lead to the discovery of the title asserted by some other party, Murphree v. Henson, 289 Ala. 340, 267 So.2d 414 (1972); or otherwise stated: knowledge of facts which would lead an ordinarily prudent person to further inquiry about the title of the vendor. Dewyer v. Dover, 222 Ala. 543, 133 So. 581 (1931)."
418 So.2d at 855-56.
In Rolling "R" Construction, Inc. v. Dodd, 477 So.2d 330
(Ala. 1985), this Court set out certain principles that are dispositive of the present appeal. The underlying facts in that case were as follows: Rolling "R" Construction, Inc., sued Ted Barnett alleging breach of contract. On August 4, 1981, while that action was pending, Barnett conveyed certain property to his wife, Sheryl Barnett. The deed conveying the property was recorded the next day, on August 5. Rolling "R" obtained a money judgment against Ted on November 10, 1982, and timely recorded a certificate of that judgment in the probate judge's office. On November 16, 1982, Rolling "R" filed a notice of lis pendens, which, although not noting that a judgment had already been obtained, advised that an action was pending against Ted and stated that when a judgment was obtained, it would constitute a lien on the property in question; the notice provided a legal description of the property. The notice alleged that Ted "did fraudulently convey the above described property to his wife by deed recorded in Real 2148, Page 583, and [Rolling "R"] does intend to seek Equitable relief to set aside said conveyance."477 So.2d at 331. The notice did not refer to Sheryl Barnett by name. Two days after filing the notice of lis pendens, Rolling "R" sued Ted and Sheryl to set aside the deed from Ted to Sheryl. A little more than a year later, while the action against the Barnetts was still pending, the Barnetts conveyed the property to Ethel Hogg Dodd, by a deed dated November *Page 797 
25, 1983, and recorded five days later. The deed was signed by both Ted Barnett and Sheryl Barnett. Rolling "R" subsequently added Dodd as a defendant in its action against the Barnetts. The trial court granted Dodd's motion for a summary judgment "on the ground that Dodd was a bona fide purchaser." 477 So.2d at 331. This Court's explanation and application of the principles of "actual" and "constructive" notice and of knowledge requiring an inquiry is set out at length, because those principles are directly pertinent to the issues on this appeal:
 "A bona fide purchaser is one who (1) purchases legal title, (2) in good faith, (3) for adequate consideration, (4) without notice of any claim of interest in the property by any other party. First National Bank of Birmingham v. Culberson, 342 So.2d 347, 350 (Ala. 1977). Notice sufficient to preclude a bona fide purchase may be actual or constructive or may consist of knowledge of facts which would cause a reasonable person to make an inquiry which would reveal the interest of a third party. Hill v. Taylor, 285 Ala. 612, 614, 235 So.2d 647, 649
(1970).
 "There is no evidence that defendant Dodd had actual notice of the interest claimed by plaintiff in the Barnett home at the time she purchased it. Plaintiff argues, however, that the notice of lis pendens and the certificate of judgment against Ted Barnett gave constructive notice of its claim.
 "A purchaser is chargeable with notice of what appears on the face of the instruments in his or her chain of title. Ball v. Vogtner, 362 So.2d 894, 897
(Ala. 1978); Union Oil Co. v. Colglazier, 360 So.2d 965, 969-70 (Ala. 1978). However, an instrument outside a purchaser's chain of title does not give constructive notice. In Jefferson County v. Mosley, 284 Ala. 593, 226 So.2d 652 (1969), the grantor conveyed a right of way to Jefferson County by deed executed October 18, 1945, and recorded April 2, 1952. The grantor conveyed the fee to Mosley by deed executed December 20, 1951, and recorded January 14, 1952. Mosley subsequently conveyed the property to third parties, who contended that they were bona fide purchasers without notice of Jefferson County's right of way. The court held that the deed from the grantor to Jefferson County did not give constructive notice because it was recorded after the recording of the deed from the grantor to Mosley, through whom the subsequent purchasers derived title. The Court quoted the following passage from American Law of Property, Vol. IV, § 17.21:
 "`"If after the recording of a deed from an owner there is later recorded another deed from the same grantor to a different grantee, whether earlier or later in date, a purchaser from the first grantee is without notice of any rights of the second grantee unless it is by reason of some fact other than the record; the purchaser's obligation to examine the grantor's indices as to that grantor ceased at the date of the recording of the first deed. . . ."'
 "Since the subsequent purchasers had a duty to check the grantor indices under the name of the original grantor until the recording of the deed to Mosley, the later recording of the deed to Jefferson County from the same grantor was outside their chain of title.
 "In the present case, defendant Dodd had a duty to check the grantor indices under the name Ted Barnett until the date the deed from Ted to Sheryl was recorded. Thereafter, defendant Dodd was obliged to check the indices under the name Sheryl Barnett. Since the notice of lis pendens and the certificate of judgment were recorded after the deed from Ted to Sheryl and neither of *Page 798 
the former documents named Sheryl, they were outside defendant Dodd's chain of title and would not serve as constructive notice of plaintiff's claim.
 "Plaintiff argues that Ted's joining in the deed conveying the property to defendant Dodd would cause a reasonable person to inquire about Ted's interest in the property and that such inquiry would have revealed the notice of lis pendens and the certificate of judgment against Ted. However, Ted's joining in the execution of the deed to Dodd was subsequent to Dodd's title examination and could not serve as constructive notice to her. The case of Creel v. Keith, 148 Ala. 233, 41 So. 780 (1906), cited by plaintiff, is inapplicable because the deed in that case which served as constructive notice by virtue of another party's joining as a grantor was not the deed to the defendant but was an earlier deed in the defendant's chain of title. In the present case, the deed in question was the deed to the third-party purchaser. There is no evidence in the record that defendant Dodd had actual knowledge before the conveyance was completed that Ted claimed any interest in the property or that he intended to sign the deed to Dodd."
477 So.2d at 331-33.
In Olympia Produce Co. v. Associates Financial Services ofAlabama, Inc., 584 So.2d 477 (Ala. 1991), "Olympia . . . asserted that its mortgage on the property located in Cherokee County was superior to a mortgage later given to Associates on the same property." 584 So.2d at 478. This Court's analysis and resolution of the issue of whose mortgage was superior was as follows:
 "A person taking a real property interest can have either actual or constructive knowledge of a prior interest in the property, or can have both kinds of knowledge. Either gives the holder of the prior interest priority over the person taking the subsequent interest. Ala. Code 1975, § 35-4-90, provides:
 "`(a) All conveyances of real property, deeds, mortgages, deeds of trust or instruments in the nature of mortgages to secure any debts are inoperative and void as to purchasers for a valuable consideration, mortgagees and judgment creditors without notice, unless the same have been recorded before the accrual of the right of such purchasers, mortgagees or judgment creditors.'
 "(Emphasis added.) The parties do not dispute that Olympia's mortgage on the Cherokee County property was incorrectly indexed and that constructive knowledge was thereby precluded. An instrument that is outside the chain of title does not give constructive notice of the contents of that instrument. Rolling `R' Constr., Inc. v. Dodd, 477 So.2d 330 (Ala. 1985). Therefore, the sole issue before this Court is whether the trial court erred in finding that there was no genuine issue of material fact concerning whether Associates had taken its mortgage on the Cherokee County property with actual knowledge of Olympia's prior mortgage on that property."
584 So.2d at 479.
Olympia Produce does stand for the further proposition, for which the Wallaces cite it in their reply brief, that "`[w]hatever is sufficient to [excite attention and] put [the party] on [his] guard and call for inquiry, is notice of everything to which the inquiry would [have led].'" (Quoting584 So.2d at 480.) In Olympia Produce there was evidence supporting a finding that Associates had had actual notice of Olympia's prior mortgage from two separate sources, independent of what appeared of record in the probate office. This Court held that the summary judgment *Page 799 
in favor of Associates was improper, because there existed a genuine issue of material fact concerning whether "Associates had taken its mortgage with actual knowledge of, or such knowledge to put it on inquiry as to, the existence of Olympia's prior mortgage." 584 So.2d at 481.
The Wallaces do not dispute that the Lees have established the first three of the four hallmarks of a bona fide purchaser enumerated in Brooker, supra; that is to say, they do not dispute that the Lees were the purchasers of the legal title to lot 30; that they purchased it in good faith; and that they paid adequate consideration for it, in the amount of $130,000. What the Wallaces do dispute is whether the Lees and Frontier had sufficient, actual, or constructive notice or knowledge at the time they purchased the property of the Wallaces' claim of interest in it. The Wallaces do not contend that Frontier or the Lees personally had any direct or actual knowledge that the conveyance from RPS to the Sholunds was fraudulent or that the Wallaces had obtained a judgment against RPS. Rather, the Wallaces argue that Lawyers Title had, or should have had, knowledge of the recorded judgment and the mid-December cluster of conveyances from RPS to the Sholunds, and that its knowledge is imputed to the Lees and Frontier. The Wallaces argue that, consequently, the Lees and Frontier "had actual and constructive knowledge of recorded documents which provided them with knowledge of facts to put a reasonably prudent person on inquiry which would have led to the discovery of the conveyance from RPS to [the] Sholund[s] and the Wallace's [sic] certificate of judgment." (Wallaces' brief, p. 14.) The Wallaces elaborate upon that premise in their initial brief to this Court as follows:
 "The Lees were not represented by counsel at the closing; however, the Lees, at the closing, paid the premiums for the owners' and mortgagee's title insurance policies which did not reflect the various documents on the public records affecting title to the property that they were purchasing from Sholund. The title company had a duty and obligation to examine the title and, after doing so, issue the owners' and mortgagee's title insurance policies evaluating the documents on the public records affecting title. . . . Insofar as the title to the Lee's [sic] property is concerned, Magic City [Title Company, Inc.] and Lawyers Title were acting as the title examining agents for the Lees and Frontier. . . ."
(Wallaces' brief, pp. 30-31.)
The Wallaces "sum up" this contention in the conclusion to their reply brief, stating that a genuine issue of material fact exists as to "whether Lawyers Title, acting for the Lees and Frontier, reasonably and prudently examined the public records and its tract index before issuing its owner's and mortgagee's title insurance policies to the Lees and Frontier. What Lawyers Title knew or should have known, the Lees and Frontier knew or should have known." (Wallaces' reply brief, pp. 11-12.)
There are two defects in this argument: (1) there is no evidence whatsoever that Lawyers Title knew of the Wallaces' judgment against RPS or of the other conveyances by RPS to the Sholunds "at the time of the purchase, or at or before, the time [the Lees] paid the purchase money or otherwise parted with such value." Brooker, 418 So.2d at 855; and (2) there is no evidence that Lawyers Title was acting "as the title examining agent for the Lees and Frontier."
As Rolling "R" and Olympia Produce clearly established, once the deed from RPS to the Sholunds was executed and recorded, a title examiner tracing the title would have been obliged to check the indices in the probate office under the name of *Page 800 
RPS only up to the point the property was transferred to the Sholunds, and from that point forward only under the name of the Sholunds. As a part of their submissions to the trial court, the Wallaces tendered portions of the deposition of Robert McCorkle, a title examiner for Magic City. (Wallaces' brief, p. 27.) When questioned by counsel for the Wallaces as to whether he would have seen the recorded certificate of judgment during his title examination, McCorkle answered in the negative. When asked to explain, he stated that "[t]he title on the deed . . . Robert P. Sholund, Inc., had been transferred to Robert P. Sholund and Patricia H. Sholund and was recorded on December 13th of 2002, and I would not have run Robert P. Sholund, Inc., after the date they had conveyed it and was recorded." He further explained that the judgment "was recorded after the date of the deed from Sholund, Inc. to Robert P. Sholund and Patricia H. Sholund. It would not be a lien against lot 30."
The Wallaces devote several pages of their briefs to this Court to a discussion of the fact that in times past "real estate transactions were closed based on abstracts of title prepared by an abstracter," and they argue that "[i]f an abstract had been correctly prepared in this case, and the former method of the purchasers and the mortgagee having the title examined by their respective attorneys, the abstract would have reflected, based on the direct real and indirect real indices in the Jefferson County Probate Office, the various instruments [in question], including the certificate of judgment." (Wallaces' brief, pp. 34-35.) Furthermore, the Wallaces argue:
 "The Lees and Frontier knew what Lawyers Title knew or should have known from an examination of the direct and indirect indices in the Jefferson County Probate Office, as well as Lawyers Title's tract index. It is well known in Jefferson County that Lawyers Title has, over the years, obtained title information by using both direct and indirect indices and its tract index in examining title."
(Wallaces' reply brief, p. 5.)
Unfortunately, neither the record nor the briefs of the parties give any explanation concerning the nature or function of the "tract index" available to and used by Lawyers Title. The only discussion of that system we find in the record is in one of the excerpts from McCorkle's deposition, in which the following exchange took place between McCorkle and counsel for the Wallaces:
 "Q. Now, do y'all use a tract index or do you use the real indirect indices?
"A. A combination.
 "Q. A combination. Now, if you use a tract index, a tract index would have shown the deed into Robert P. Sholund, Inc., would it not have?
". . . .
"A. Yes, sir.
 "Q. And a tract index would have also shown a Certificate of Judgment that had been recorded against Robert P. Sholund, Inc., would it not?
"A. It would now.
"Q. What do you mean it would now?
 "A. Well, a tract index has an effective date that may be three or four months prior to the current commitment date."
Although the Wallaces argue generally throughout their briefs that the recorded certificate of judgment would have been known to Lawyers Title through its tract index, they simply never explain a "tract index" beyond its descriptive name. Despite what may be "well known in Jefferson County" concerning Lawyers Title's use of a tract index in examining title, that localized knowledge is not generally known to this Court so that this Court could *Page 801 
attempt to take judicial notice of the practice; this Court cannot attempt to speculate otherwise on what might be the structure and function of any "tract index" to which Lawyers Title might have had access.
Moreover, regardless of what Lawyers Title knew, or should have known, as a result of its examination of the probate records or its tract index, we cannot agree with the Wallaces' contention that Lawyers Title was acting as "the title examining agent for the Lees and Frontier" and that, "[w]hat Lawyers Title knew or should have known, the Lees and Frontier knew or should have known." (Wallaces' reply brief, p. 6, p. 12.)
 "`Proof of an agency relationship . . ., rather than an independent-contract relationship, is critical to [the Wallaces] action, because it is a "well-settled rule that a principal is not ordinarily liable for the torts of its independent contractor."
 "`Furthermore, "when a defendant's liability is based on the theory of agency, agency may not be presumed, and . . . to [support a finding of liability] the plaintiff must present substantial evidence of an agency relationship." The party asserting the existence of an agency relationship "`has the burden of adducing sufficient evidence to prove its existence.'"'"
Lincoln Log Home Enters., Inc. v. Autrey, 836 So.2d 804, 806
(Ala. 2002) (citations omitted; first bracketed language added).
A summary judgment on the issue of agency is generally inappropriate because agency is a question of fact, and agency may not be presumed; the party asserting it has the burden of adducing sufficient evidence to prove its existence. Kennedy v.Western Sizzlin Corp., 857 So.2d 71, 77 (Ala. 2003). There is a distinction between an abstract of title and title insurance. When a title insurance company is engaged by a party merely to issue a title insurance policy, without the additional duty of preparing and delivering an abstract of title, and when the party procuring the insurance neither retains nor exercises any supervision or control over the manner in which the title insurance company determines the status of title, the title insurance company functions as an independent contractor and not as the agent of the party. Under such a relationship, notice to, or knowledge obtained by, the title insurance company does not constitute actual or constructive notice or knowledge to the party retaining the title insurance company. Rice v. Taylor,220 Cal. 629, 32 P.2d 381 (1934); Colegrove v. Behrle,63 N.J.Super. 356, 164 A.2d 620 (1960); Soper v. Knaflich,26 Wash.App. 678, 613 P.2d 1209 (1980); Focus Inv. Assocs., Inc. v.American Title Ins. Co., 797 F.Supp. 109 (D.R.I. 1992); andHuntington v. Mila, Inc., 119 Nev. 355, 75 P.3d 354 (2003).
The only fact the Wallaces point to in support of their argument that Lawyers Title acted as "the title examining agent for the Lees and Frontier" is that the Lees paid the premiums for the title insurance as a part of the closing costs. That fact is in no way indicative of an agency relationship between the Lees and Lawyers Title; rather, it is indicative of a transaction between an insured and an independent-contractor insurer.
Accordingly, because there is no evidence in the record indicating that Lawyers Title knew or should have known of the Wallaces' judgment against RPS on January 13, 2003, when the Lees closed their purchase on lot 30 from the Sholunds, and because there is no evidence indicating that Lawyers Title was acting as the Lees' agent in issuing the title insurance policies in question, there is no support for the Wallaces' contention that *Page 802 
notice or knowledge of the Wallaces' judgment against RPS should be imputed to the Lees. Such notice or knowledge as Lawyers Title, the Lees, or Frontier obtained after the closing is irrelevant to the issue whether the Lees were bona fide purchasers for value or whether Frontier was a bona fide mortgagee for value at the time of the January 13, 2003, closing.
The summary judgment in favor of the Lees and Frontier is affirmed.
AFFIRMED.
NABERS, C.J., and SEE, BROWN, and STUART, JJ., concur.