First Properties, L.L.C., appeals from a final judgment entered against it in an action filed by JPMorgan Chase Bank, National Association. We affirm.
 Factual and Procedural Background
On October 19, 1998, the Jefferson County fire district of Forestdale conducted a foreclosure sale on property located at 933 Heflin Avenue East in Birmingham. At the time of the sale, Ruthia Cullen Dumas held duly recorded title to the property. Apparently, the dues assessed by the fire district for fire-protection services were delinquent, and to satisfy the delinquency the fire district sold the property in accordance with the procedure outlined *Page 440 
under "The Municipal Public Improvement Act," § 11-48-1
et seq., Ala. Code 1975. See generally Special Assets,L.L.C. v. Chase Home Fin., L.L.C., 991 So.2d 668, 670
(Ala. 2007) (discussing the local amendment authorizing the creation of fire districts in Jefferson County and the assessment of dues for fire-protection services by those fire districts); see also § 12 of Act No. 79, Ala. Acts 1966 (Special Session), as amended by Act No. 500, Ala. Acts 1978, which states that a service charge levied for fire districts in Jefferson County is "a personal obligation of the owner of the property served by the system," and creates a "lien against said property in favor of the district, which lien shall be enforceable by sale thereof in the same manner in which the foreclosure of a municipal assessment for public improvements is authorized."
With a bid of $603.45, the fire district was the highest bidder at the sale. The business manager of the fire district executed a deed purporting to convey the property from the fire district, as grantor, to the fire district, as grantee. The fire district then recorded the deed in the Jefferson County Probate Office on October 28, 1998. The deed was not listed in the grantor/grantee index, did not refer to Dumas as the owner of record, and contained what the trial court determined was an inadequate description of the property.
On November 9, 1999, Dumas secured a loan of $67,550 by executing a mortgage on the property in favor of First Franklin Financial Corporation. First Franklin recorded that mortgage in the Jefferson County Probate Office on January 13, 2000. On July 31, 2004, First Franklin assigned the mortgage to JPMorgan, and that mortgage was recorded on June 14, 2005.
On December 18, 2004, the fire district executed a quitclaim deed to the property to First Properties, in consideration of $2,851.25. The quitclaim deed listed Dumas as the owner of record before the foreclosure sale held on October 19, 1998. On December 23, 2004, First Properties recorded the quitclaim deed in the Jefferson County Probate Office.
On June 8, 2005, JPMorgan filed an action seeking a judgment declaring that it was a bona fide holder for value of the property without notice of the foreclosure sale by the fire district. JPMorgan claimed that it was entitled to status as a bona fide holder for value because, it alleged, the foreclosure deed to the fire district and the quitclaim deed from the fire district to First Properties were outside the chain of title and therefore did not serve as constructive notice to JPMorgan of the claimed interests of the fire district and First Properties. JPMorgan later amended its complaint to, among other things, request that the court enter an order quieting title in favor of JPMorgan.
JPMorgan and First Properties each filed motions for a summary judgment. On March 29, 2006, the trial court entered an order granting the summary-judgment motion of First Properties and denying the summary-judgment motion of JPMorgan. However, JPMorgan filed a motion under Rule 59(e), Ala. R. Civ. P., to alter, amend, or vacate the judgment. The trial court granted that motion on June 8, 2006, and set aside its order of March 29, 2006. The court found that there were genuine issues of fact that prevented a summary judgment in favor of First Properties, and it set the matter for a trial on the merits.
Before the date set for a trial, JPMorgan and First Properties filed a "joint stipulation" waiving their right to a trial on the merits and submitting the case for a final decision based on the evidentiary submissions accompanying the parties' summary-judgment materials. The parties *Page 441 
also stipulated to the following additional facts: (1) First Franklin's mortgage of the property was recorded in the Jefferson County Probate Office; (2) JPMorgan held the mortgage to the property by virtue of First Franklin's assignment of that mortgage to JPMorgan; and (3) at the time of the fire-dues foreclosure sale, the fire district did not send a warning to redeem to First Franklin or JPMorgan.
On November 29, 2006, the trial court entered a final order that included the following holdings:
 "1. JPMorgan is a bona fide encumbrancer of the property, for value, without notice of the foreclosure deed under which First Properties claims. As a result, the foreclosure sale and deed are ineffective as against JPMorgan.
 "2. Alternatively, JPMorgan was entitled to actual notice of the fire dues foreclosure sale and expiration of the redemption period. JPMorgan, having received no such notice, was consequently deprived of its rights in the subject property without notice in violation of due process of law. Accordingly, the foreclosure deed is ineffective as against JPMorgan.
 "3. Alternatively, the legal description contained in the foreclosure sale notice and deed were defective, thus rendering the foreclosure sale and foreclosure deed invalid.
 "4. Alternatively, JPMorgan is entitled to redeem the property within three months from the date this order becomes final and, alternatively, for so long as its mortgagor, Mrs. Dumas, holds possession of the property."
The trial court later denied a subsequent Rule 59(e) motion filed by First Properties, and First Properties filed a timely notice of appeal.
 Discussion
First Properties argues that the trial court erred in finding that JPMorgan is a "bona fide encumbrancer" for value.
 "`A bona fide purchaser is one who (1) purchases legal title, (2) in good faith, (3) for adequate consideration, (4) without notice of any claim of interest in the property by any other party. First National Bank of Birmingham v. Culberson, 342 So.2d 347, 350 (Ala. 1977). Notice sufficient to preclude a bona fide purchase may be actual or constructive or may consist of knowledge of facts which would cause a reasonable person to make an inquiry which would reveal the interest of a third party. Hill v. Taylor, 285 Ala. 612, 614, 235 So.2d 647, 649 (1970).'"
Wallace v. Frontier Bank, N.A., 903 So.2d 792, 797
(Ala. 2004) (quoting Rolling "R" Constr., Inc. v. Dodd,477 So.2d 330, 331-32 (Ala. 1985)). First Properties does not dispute that JPMorgan meets the first three requirements, i.e., that JPMorgan purchased legal title in good faith for adequate consideration. First Properties contends, however, that JPMorgan did not purchase the property without notice of the fire district's and First Properties' claims to the property.
As noted, the fire district recorded the foreclosure-sale deed on October 28, 1998, before Dumas executed a mortgage on the property in favor of First Franklin. First Properties argues that First Franklin, which subsequently assigned the mortgage to JPMorgan, "was on constructive notice of all documents of record in the probate court," and, therefore, that JPMorgan had constructive notice of the foreclosure-sale deed. (First Properties' brief, p. 16.)[1] We disagree. *Page 442 
Although the fire district recorded the foreclosure-sale deed in the Jefferson County Probate Office on October 28, 1998, that deed does not list the record owner (Dumas). Thus, when the foreclosure-sale deed was indexed in the probate records the fire district was listed as both the grantor and the grantee, and the undisputed evidence before the trial court showed that a search of the grantor-grantee index in the Jefferson County Probate Office would not have uncovered the foreclosure-sale deed. Consequently, the foreclosure-sale deed is a "wild deed,"[2] outside the chain of title, and the fact that it was recorded did not impart constructive notice to First Franklin or to JPMorgan. As explained inWallace, 903 So.2d at 797: "`A purchaser is chargeable with notice of what appears on the face of the instruments in his or her chain of title. Ball v.Vogtner, 362 So.2d 894, 897 (Ala. 1978); Union Oil Co.v. Colglazier, 360 So.2d 965, 969-70 (Ala. 1978). However,an instrument outside a purchaser's chain of title does notgive constructive notice.'" (quoting Dodd,477 So.2d at 332) (emphasis added). Accord Brannan v.Marshall, 184 Ala. 375, 377, 63 So. 1007, 1007 (1913), which states:
 "It is well settled by numerous decisions in this state that the registration of a conveyance executed by one who is a stranger to the title as it is shown by the records — that is, by a grantor who does not appear in the chain of recorded conveyances, or other title records, as one who has acquired an interest in the land in question — is not constructive notice to a subsequent purchaser in the regular chain of title. Fenno v. Sayre, 3 Ala. 458 [(1842)]; Gimon v. Davis, 36 Ala. 589 [(1860)]; Scotch Lumber Co. v. Sage, 132 Ala. 598, 32 South. 607, 90 Am. St. Rep. 932 [(1902)]; Tenn. C, I. R. Co. v. Gardner, 131 Ala. 599, 32 South. 622 [(1902)]."
Accordingly, First Properties' argument that the foreclosure-sale deed provided *Page 443 
constructive notice to JPMorgan is without merit.
First Properties also contends, however, that JPMorgan knew of, or reasonably should have known of, facts that would have put it on "inquiry notice" — i.e., "facts which would cause a reasonable person to make an inquiry which would reveal the interest" of the fire district through which First Properties claims title to the property. Wallace,903 So.2d at 797. To support that contention, First Properties relies on the title commitment that Stewart Title Guaranty Company, which issued a title-insurance policy to First Franklin for the property, provided to First Franklin at the time of the execution of the November 9, 1999, mortgage.
First Properties alleges that the title commitment from Stewart Title "disclosed to First Franklin that the property was in a fire district and subject to fire dues." (First Properties' brief, p. 8.) However, the only portion of the title commitment that First Properties cites is a sentence that reads: "The following requirements must be met and completed to the satisfaction of [Stewart Title] before its policy of title insurance will be issued: . . . 4. Proof that there are no unpaid due and payable, improvement assessments and/or fire dues against subject property." The handwritten word "affidavit" appears above item "4" quoted above, which, according to the parties, indicates that either Stewart Title or its agent, Birmingham Title Services Corporation, accepted an affidavit from Dumas as satisfactory proof that there were no unpaid fire dues. First Properties implies that it was unreasonable for Stewart Title and Birmingham Title to rely on an affidavit as proof that there were no unpaid fire dues on the property, and, without citing any authority to support the proposition, First Properties suggests that Stewart Title and Birmingham Title should have inquired to determine what fire district the property was located in and whether there were any unpaid fire dues.[3]
Other than noting that the undisputed evidence in the record shows that the foreclosure-sale deed was outside the chain of title and therefore that a search of the Jefferson County Probate records at the time of the 1999 mortgage would not have located the foreclosure-sale deed, we express no opinion regarding whether the title insurer had an obligation to inquire further as to whether there were any fire dues on the property that remained unpaid. Even if First Properties were correct in its claim that Stewart Title and Birmingham Title had knowledge of facts that should have caused them to inquire further regarding the existence of any unpaid fire dues, First Properties has not offered any evidence suggesting that First Franklin (and, by extension, JPMorgan) should be charged with that same knowledge.
In Wallace, supra, J. Steve Wallace and Lucy S. Wallace recovered a $60,000 judgment against Robert P. Sholund, Inc. ("RPS"). 903 So.2d at 793. Soon after the judgment was entered, RPS conveyed several properties to Robert P. Sholund and Patricia Sholund, and the Sholunds recorded the deeds to those properties. Four days after the deeds were recorded, the Wallaces recorded a certificate of judgment *Page 444 
against RPS. Some time later, the Sholunds executed a deed to one of the properties to Nicholas Lee and Tammy Lee. The Lees then executed a mortgage on the property in favor of Frontier Bank, N.A., and both the deed from the Sholunds to the Lees and the mortgage from the Lees to Frontier were recorded.903 So.2d at 793-94.
The Wallaces subsequently brought an action seeking to set aside the deed from RPS to the Sholunds and to declare that both the deed from the Sholunds to the Lees and the Lees' mortgage to Frontier were subject to the voiding of the earlier deed. 903 So.2d at 793. The Wallaces alleged that the Lees were not bona fide purchasers for value without notice because, the Wallaces contended, the Lees' title insurer "had, or should have had, knowledge of the [Wallaces'] recorded judgment and the mid-December cluster of conveyances from RPS to the Sholunds, and that [the title insurer's] knowledge is imputed to the Lees and Frontier." 903 So.2d at 799.
The underlying premise of the Wallaces' argument was that the title insurer (and its agent) were "`acting as the title examining agents for the Lees and Frontier.'" 903 So.2d at 799
(quoting the Wallaces' brief). In rejecting the Wallaces' position, this Court noted that the Wallaces had not offered any evidence suggesting an agency relationship between the title insurer and the Lees and Frontier:
 "[A]gency may not be presumed; the party asserting it has the burden of adducing sufficient evidence to prove its existence. Kennedy v. Western Sizzlin Corp., 857 So.2d 71, 77 (Ala. 2003). There is a distinction between an abstract of title and title insurance. When a title insurance company is engaged by a party merely to issue a title insurance policy, without the additional duty of preparing and delivering an abstract of title, and when the party procuring the insurance neither retains nor exercises any supervision or control over the manner in which the title insurance company determines the status of title, the title insurance company functions as an independent contractor and not as the agent of the party. Under such a relationship, notice to, or knowledge obtained by, the title insurance company does not constitute actual or constructive notice or knowledge to the party retaining the title insurance company. Rice v. Taylor, 220 Cal. 629, 32 P.2d 381 (1934); Colegrove v. Behrle, 63 N.J.Super. 356, 164 A.2d 620 (1960); Soper v. Knaflich, 26 Wash.App. 678, 613 P.2d 1209 (1980); Focus Inv. Assocs., Inc. v. American Title Ins. Co., 797 F.Supp. 109 (D.R.I. 1992); and Huntington v. Mila, Inc., 119 Nev. 355, 75 P.3d 354 (2003).
 "The only fact the Wallaces point to in support of their argument that Lawyers Title acted as `the title examining agent for the Lees and Frontier' is that the Lees paid the premiums for the title insurance as a part of the closing costs. That fact is in no way indicative of an agency relationship between the Lees and Lawyers Title; rather, it is indicative of a transaction between an insured and an independent-contractor insurer.
 "Accordingly, because there is no evidence in the record indicating that Lawyers Title knew or should have known of the Wallaces' judgment against RPS on January 13, 2003, when the Lees closed their purchase on lot 30 from the Sholunds, and because there is no evidence indicating that Lawyers Title was acting as the Lees' agent in issuing the title insurance policies in question, there is no support for the Wallaces' contention that notice or knowledge of the Wallaces' judgment against RPS should be *Page 445 
imputed to the Lees. Such notice or knowledge as Lawyers Title, the Lees, or Frontier obtained after the closing is irrelevant to the issue whether the Lees were bona fide purchasers for value or whether Frontier was a bona fide mortgagee for value at the time of the January 13, 2003, closing."
903 So.2d at 801-02.
In the present case, the trial court's order of final judgment states: "The record in this case contains no allegation or proof that the title company in this case was the agent of First Franklin." First Properties does not explain how that ruling of the trial court was erroneous. Instead, to support its contention that Birmingham Title was acting as the agent of First Franklin, First Properties cites an affidavit from the president of Birmingham Title. That affidavit indicates that Birmingham Title "researches and prepares title insurance binders and policies as agent for Stewart Title" and that Birmingham Title "performed a title search and prepared a title commitment" relating to the Dumas property. The affidavit indicates only that the "title commitment was prepared for the benefit of First Franklin." Thus, the affidavit does not indicate that the transaction between First Franklin and Stewart Title was anything other than a "transaction between an insured and an independent-contractor insurer." SeeWallace, 903 So.2d at 802. Consequently, First Properties has not offered evidence of an agency relationship between Stewart Title or Birmingham Title and First Franklin or JPMorgan, and any alleged notice that the title insurer had is not imputed to First Franklin or JPMorgan.
First Properties has not demonstrated that the trial court erred in holding that JPMorgan was a bona fide holder for value without notice of the foreclosure-sale deed. Accordingly, the trial court's judgment is due to be affirmed.
 Conclusion
The judgment of the trial court is affirmed.
AFFIRMED.
COBB, C.J., and SEE, WOODALL, and PARKER, JJ., concur.
[1] More specifically, First Properties contends that JPMorgan was "put on constructive notice of anything of record in the probate court no matter how difficult to find those documents may be." (First Properties' brief, p. 29.) JPMorgan, in addition to citing legal authority that contradicts First Properties' argument in that regard, explains the impracticality of First Properties' position:
 "First Properties argues that all documents recorded in a probate court impart constructive notice to any buyer. Under that logic, a buyer would be required to inspect all recorded documents in searching title to property. The average number of documents recorded daily in Jefferson County is posted at the Probate Court each day, and is thus open to judicial notice. Considering both divisions, Birmingham and Bessemer, the daily number is just under 1,000, amounting to approximately 260,000 per year. A 20-year search, therefore, would require review of 5,200,000 documents. The implications of First Properties' argument do not end there. It must be considered that such a search would include a duty to look [not only] for any instrument out of the record owner, but also for any document of any nature containing the legal description of the property. Recognizing that the legal description at issue in this case does not close, First Properties would subject a title searcher to the duty of inspecting 5,200,000 documents and tracing millions of miles of calls in legal descriptions, handicapped by the even more severe burden of being subject to notice imparted by incomplete legal descriptions."
(JPMorgan's brief, pp. 14-15.)
[2] See Robin Paul Malloy Mark Klapow,Attorney Malpractice for Failure to Require Fee Owner'sTitle Insurance in a Residential Real Estate Transaction, 74 St. John's L.Rev. 407, 432 (2000):
 "A major pitfall in most recording systems involves the so-called wild deed. A wild deed is an instrument of conveyance that is literally recorded, but cannot be found by using the recordation index. Because it cannot be found, the wild deed poses a significant problem for searchers."
(Footnote omitted.)
[3] As JPMorgan points out, First Properties does not cite any evidence in the record that suggests that contacting the fire district would have disclosed that the property had been sold for unpaid fire dues. JPMorgan explains that because the fire district sold the property in 1998 to satisfy the unpaid fire dues, a call by First Franklin in 1999 might have revealed only that there currently were no unpaid fire dues, not that the property had been sold previously to satisfy unpaid fire dues.