BOLIN, Justice.
Frank K. Bynum appeals from a summary judgment entered in favor of the plaintiffs, Angel Barker and GMAC Mortgage, LLC, in this dispute involving the recording of a mortgage. We affirm.

Facts and Procedural History

On January 19, 1996, pursuant to a warranty deed, Wells Fargo Bank, N.A., conveyed to Davis & Associates, LLC, real property described as:
“Lots 11 and 12, in Block 785, according to the Survey of Bessemer Land and Improvement Company’s First Addition to Bessemer, as recorded in Map Book 3, Page 36, in the Probate Office of Jefferson County, Alabama, Bessemer Division. Being situated in Jefferson County, Alabama.”
The warranty deed conveying the property to Davis & Associates is recorded in the real property records of the Jefferson County Probate Office at Book LR200664, page 13451.
On February 1, 2006, Bynum loaned Davis & Associates $43,000. The loan was secured by a mortgage on the real property. The mortgage identifies the borrower as “Davis Associates, LLC” and is recorded at Book LR200664, page 28232, in the Jefferson County Probate Office. As noted, the title to the property was held by “Davis & Associates, LLC.”
On December 22, 2006, Davis & Associates conveyed the property to TMS Properties, LLC, through a warranty deed recorded at Book LR200702, page 15253, in the Jefferson County Probate Office. On March 15, 2007, TMS Properties conveyed the property to Barker through a warranty deed recorded at Book LR200704, page 29632, in the Jefferson County Probate Office. To finance the purchase of the property, Barker obtained a purchase-money mortgage from Homecomings Financial, LLC.
According to Bynum, Davis & Associates failed to pay its mortgage, and he notified Barker and Homecomings Financial that he intended to foreclose on the property. On August 14, 2007, Barker and Homecomings Financial filed an action against Bynum seeking a judgment declaring that she and Homecomings Financial were bona fide purchasers of the property. On August 29, 2007, Barker moved to substitute GMAC as a plaintiff because Homecomings Financial had sold the mortgage to GMAC; the trial court granted the motion.
*1015 On November 16, 2007, Barker and GMAC filed a motion for a summary judgment. In support of their summary-judgment motion, Barker and GMAC attached, among other things, the affidavits of Jacquelyn Rhodes, the probate-court recording supervisor in Jefferson County and Jason Whittle, the vice president of Alabama Real Estate Loan Services. In Rhodes’s affidavit, she stated, in pertinent part:
“The grantor-grantee real property indices for Jefferson County, Alabama, are maintained by the Probate Court. When real estate documents, such as deeds and mortgages, are filed with the Probate Court, copies of said documents are placed into an electronic file, and the file constitutes the permanent record for real estate documents. The documents are then indexed by grantor-grantee (direct) and grantee-grantor (indirect). Mortgages are indexed in the direct and indirect indices with deeds. The grant- or-grantee indices, in ‘book’ form, that have been maintained in this Probate Court for many years, were discontinued in 1984 and were converted to a database accessed by computer. The official grantor-grantee indices maintained by this Court in accordance with ALABAMA CODE § 12-13-48 (1975) are now searchable only by means of computer terminals located in the Probate office record room at the courthouse.
“A computer search for ‘Davis & Associates’ as grantor, from January 1, 1984, through October 30, 2007, on this court’s database, will produce a search report, a true and correct copy of which is attached as Exhibit A hereto. A computer search for ‘Davis & Associates LLC’ as grantor, from January 1, 1984, through October 30, 2007, on this court’s database, will produce a search report, a true and correct copy of which is attached as Exhibit B4 hereto. The documents shown on these searches are on file in Probate Court and have been duly recorded and properly indexed.”
Rhodes’s search results for “Davis & Associates” and “Davis & Associates, LLC” as grantor do not reflect Bynum’s mortgage.
Whittle’s affidavit provided, in pertinent part, as follows:
“I have been in the business of abstracting and searching titles for eight years, during which time I have become familiar with real property records and indexes in the Probate Office of Jefferson County, Alabama. I have personal knowledge of the facts set forth in this affidavit and make this affidavit on my own knowledge.
“In February of 2007, Alabama Real Estate Loan Services conducted a title search in connection with a sale of property from TMS Properties, LLC to Angel Barker.
“In conducting our search, we began by electronically searching the grant- or/grantee index under the name of the record owner, TMS Properties, LLC, which produced the matters of title shown in the screen print attached at Tab C — 1. Our search revealed TMS Properties, LLC held title by virtue of a warranty deed dated December 22, 2006, executed by Davis <& Associates, LLC, and recorded at Book LR200702, Page 15253, in the Jefferson County Probate Office.
“Our search continued by electronically searching the grantor/grantee index under the name Davis & Associates, LLC, which produced the matters of title shown in the screen print attached at Tab 0-2. No outstanding mortgages or liens were found of record.
“I have since been provided a copy of a mortgage executed by Davis Associates, LLC, in favor of Frank K. Bynum, *1016 recorded at Book 200664, Page 28232, in said probate office (‘Bynum mortgage’). I was asked to ascertain whether the Bynum mortgage is in the chain of title of Davis & Associates, LLC.
“The Bynum mortgage is not in the chain of title of Davis & Associates, LLC. The mortgage is indexed under the name of the borrower, ‘Davis Associates, LLC,’ and not under the name of the record owner ‘Davis & Associates, LLC.’ Consequently, a search of the grantor/grantee indices of Jefferson County Probate Records under the name of the record owner, ‘Davis & Associates, LLC,’ does not disclose the Bynum mortgage, as evidenced by the screen print attached at Tab C-l.
“The documents attached hereto are true and correct copies of documents as they appear in the Probate Office of Jefferson County, Alabama.”
On December 18, 2007, Bynum filed a counterclaim seeking to foreclose on the property to satisfy his mortgage. On February 5, 2008, Bynum filed a motion to strike Rhodes’s and Whittle’s affidavits.
The trial court held a hearing on the summary-judgment motion. On March 7, 2008, the trial court entered an order striking “those portions of [Rhodes’s] and [Whittle’s] affidavits that arguably could be considered legal conclusions and not permissible statements of objective observations and facts.” The court concluded that there was no genuine issue of material fact and held that Barker and GMAC were bona fide purchasers, holding title free and clear of Bynum’s mortgage. The court stated that Bynum’s mortgage was outside the chain of record title. The court denied Bynum’s counterclaim seeking foreclosure. Bynum appeals.

Standard of Review

In reviewing the disposition of a motion for a summary judgment, we use the same standard the trial court used in determining whether the evidence before it presented a genuine issue of material fact and whether the movant was entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala.1988).
“When the movant makes a prima facie showing that no genuine issue of material fact exists, the burden then shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794 (Ala.1989). Evidence is ‘substantial’ if it is of ‘such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).... [T]his Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala.1990).”
Taylor v. Striplin, 974 So.2d 298, 301 (Ala.2007).

Discussion

At the outset, we note that § 12-13-43, Ala.Code 1975, provides:
“The probate judge of each county in this state shall keep in his office four well-bound books of suitable size and grade of paper in which to make a general direct and a general reverse index of each instrument filed for record in his office, and two of said books shall be used for conveyances of real property and two for conveyances of personal property and all other instruments entitled to record in his office. In the general direct indexes he shall enter, in regular alphabetical order, under appropriate title, the name of each maker of *1017 the instrument, the name of each person to whom made, the date and character of such instrument and the date filed for record; and, in the general reverse indexes, in like alphabetical order, under its appropriate title, he shall enter the name of each person to whom the instrument is made, the name of each person by whom the instrument is made, the date and character of such instrument and the date filed for record. Instruments containing conveyances of both real and personal property shall be entered upon each set of indexes.
“Immediately on receipt of any instrument to be recorded, the probate judge shall make the entries required by this section; and, after recording the instrument, the books and page in which the record is made shall be noted opposite each name thus placed in such general direct and in such general reverse indexes.
“Failure to comply strictly with the provisions of this section shall subject the probate judge to a penalty of $100.00 for each failure, to be recovered by any person who institutes a civil action for the same, besides damages to any person injured by such failure.”
According to Rhodes’s affidavit, the Jefferson County Probate Court in 1984 stopped keeping bound books of property conveyances set out in the form of indices and began keeping computerized indices of such conveyances. None of the parties argue that Jefferson County lacked the authority to establish a computerized index. They also do not cite any authority giving Jefferson County the power to stop keeping bound books. However, our research has uncovered a local act from 1959 that allowed counties having the population of Jefferson County to install and maintain an “improved indexing and recording system” that would become the official record in lieu of the bound books required to be kept by § 12-13^3. Act No. 514, Ala. Acts 1959.
In establishing chain of title, a purchaser or his or her agent must search the grantor index for each name in the chain of title of the property to locate any relevant mortgages, liens, or judgments against the property. A purchaser is protected when the records do not provide notice of such an interest. As this Court stated in Wallace v. Frontier Bank, N.A., 903 So.2d 792, 797 (Ala.2004):
“ ‘A bona fide purchaser is one who (1) purchases legal title, (2) in good faith, (3) for adequate consideration, (4) without notice of any claim of interest in the property by any other party. First National Bank of Birmingham v. Culberson, 342 So.2d 347, 350 (Ala.1977). Notice sufficient to preclude a bona fide purchase may be actual or constructive or may consist of knowledge of facts which would cause a reasonable person to make an inquiry which would reveal the interest of a third party. Hill v. Taylor, 285 Ala. 612, 614, 235 So.2d 647, 649 (1970).’”
(Quoting Rolling “R” Constr., Inc. v. Dodd, 477 So.2d 330, 331-32 (Ala.1985).)
Bynum argues that his mortgage became a public record immediately upon recording it in the probate office and that once it became a public record, regardless of how it was indexed by the probate judge, everyone was on notice of its existence. In support of his argument, Bynum cites Norton v. Kumpe, 121 Ala. 446, 25 So. 841 (1898). In Norton, a probate judge was held liable to a person who had purchased property in reliance on a search of the index that failed to disclose any encumbrances and who was dispossessed pursuant to a foreclosure proceeding on an unindexed mortgage. The Court stated:
*1018 “The direction to prepare and keep a general, direct, and reversed index of prior as well as subsequently recorded conveyances was as imperative, and demanded the same measure of care and accuracy in its execution, as did the statutory direction to record and index in the first instance. The purpose of the enactment was to afford facilities for a search of the record, and such purpose would fail if no reliance could be had upon the general index. If it carried no presumption of verity the searcher must resort to the records as if there was no general index. The general index if consulted at all would become a snare, rather than a guide if when purporting to point to all incumbrances it was silent as to some.
“The mere constructive notice which the registration statutes impute from the filing of a conveyance for record is for the protection of those claiming under the conveyance, and does not exist for the protection of the recording officer from liability for non-performance of official duty.”
121 Ala. at 448-49, 25 So. at 842. Norton is distinguishable from the present case because, here, the probate judge did properly place Bynum’s mortgage in the indices; however, he indexed it as “Davis Associates, LLC,” the name Bynum had listed as the mortgagor, which was the incorrect name, omitting the ampersand between “Davis” and “Associates.” In Norton, the probate judge failed to record any mortgage in the index. Here, Bynum prepared the mortgage deed in error and named as the mortgagor “Davis Associates, LLC” instead of “Davis & Associates, LLC.” The probate judge properly recorded and indexed “Davis Associates, LLC” as the mortgagor. Because of the absence of the ampersand, Bynum’s mortgage was alphabetically altered in the index and, thus, appeared outside the chain of title.
Bynum cites several other cases regarding mortgages that either were not properly indexed or were not placed in the index at all for the proposition that such a mistake by the recording officer does not affect the mortgagee’s rights. See Chapman & Co. v. Johnson, 142 Ala. 633, 38 So. 797 (1904); Amos v. Givens, 179 Ala. 605, 60 So. 829 (1913); and Carter v. Tennessee Coal, Iron, & R.R., 180 Ala. 367, 61 So. 65 (1913). In those cases, however, the fault of failing to properly record the mortgages was with the probate court, whereas in the present case, it was Bynum who listed the mortgagor’s name incorrectly on his mortgage. The probate judge properly recorded that incorrect name and placed it in the indices.
Bynum argues that Barker and GMAC had constructive notice of his mortgage. Several cases have addressed constructive notice to subsequent purchasers when recorded instruments were outside the chain of title. In Johnson v. Wilson & Co., 137 Ala. 468, 34 So. 392 (1903), both the plaintiffs and the defendant argued that they had title to property based on mortgages executed by J.W. Dixon. The defendant acquired his mortgage in 1900, and the mortgage was signed by A.W. Dixon. The plaintiffs’ mortgages were executed in 1901 and were signed by J.W. Dixon. The question before the Court was whether the plaintiffs had constructive notice of the defendant’s mortgage. The Court noted that conveyances to secure debt do not operate against creditors and purchasers without notice until they are recorded and that recording such a conveyance in the proper office operates as notice of its contents. The Court determined that although the defendant’s mortgage from A.W. Dixon was recorded, it was not recorded under the name of the record title *1019 holder and, therefore, it did not provide the plaintiffs with constructive notice.
“It may be and doubtless is true that the mortgage executed by J.W. Dixon to the defendant under the assumed name of A.W. Dixon is a valid conveyance inter partes; but it does not follow from this, that the plaintiffs who subsequently purchased it from Dixon under his true name are chargeable with constructive notice of the mortgage which was recorded correctly. In other words, the record of a mortgage executed in the name of A.W. Dixon is not notice that J.W. Dixon executed it. The names are as entirely different as are the names of J.W. Dixon and J.W. Smith. Had Dixon assumed the name of J.W. Smith and executed the mortgage signing that name instead of his true name, it could hardly be doubted, although he bound himself, that the record of it would not have operated as notice to the plaintiffs.”
187 Ala. at 472, 34 So. at 393.
In Ball v. Vogtner, 362 So.2d 894 (Ala.1978), a judgment creditor sued the purchasers of certain property to place a judgment lien on the property. The purchasers argued that the judgment lien was not valid, and they raised the defense that the they were good-faith purchasers for value without notice of the judgment lien because, they said, the lien was outside the chain of title. The judgment had been filed against Mary Morgan, who had married between the filing of the judgment creditor’s lawsuit and the subsequent judgment. Morgan’s last name became Collins. The purchasers bought the property from Collins. The judgment creditor argued that the purchasers had constructive notice of the lien. This Court stated:
“Mary Collins both acquired and conveyed title to the property in her name as such. Nowhere in the [purchasers’] chain of title does the name Mary Morgan appear. The [purchasers] possessed no facts sufficient to put them on inquiry or to enable them to discover the existence of the judgment lien against Mary Morgan. An instrument executed by a married woman in her name prior to marriage without mention of her married name imparts no notice. Huff v. Sweetser, 8 Cal.App. 689, 97 P. 705 (1908); 8 G. Thompson, Commentaries on the Modern Law of Real Property § 4300, at 275 (1963). In the absence of actual knowledge, the purchaser is charged, with notice of that which appears on the face of all the instruments by which he takes title, but is not bound to inquire into collateral circumstances. See First National Bank v. Culberson, 342 So.2d 347 (Ala.1977); Dewyer v. Dover, 222 Ala. 543, 133 So. 581 (1931); Wittmeir v. Leonard, 219 Ala. 314, 122 So. 330 (1929). A reasonable search of the records in the instant case would have revealed nothing of the judgment lien since the parties would be searching under the name Mary Collins, not Mary Morgan.”
362 So.2d at 897.
Most recently, in First Properties, LLC v. JPMorgan Chase Bank, National Association, 993 So.2d 438 (Ala.2008), this Court held that the assignee of a mortgage did not have constructive notice that the property had been.sold in a foreclosure sale where the recorded deed did not list the correct owner. In 1998, the Forest-dale fire district conducted a foreclosure sale of certain property owned by the homeowner presumably because the payment for fire-protection services was delinquent. To satisfy the delinquency, the fire district sold the property, and the fire district was the highest bidder. The business manager for the fire district executed a deed purporting to convey the property *1020 from the fire district, as grantor, to the fire district, as grantee. On October 28, 1998, the deed was properly recorded. However, “the deed was not listed in the grantor/grantee index, did not refer to [the homeowner] as the owner of record, and contained what the trial court determined was an inadequate description of the property.” 993 So.2d at 440.
On November 9,1999, the homeowner in First Properties secured a loan by executing a mortgage on the property in favor of First Franklin Financial Corporation. First Franklin recorded that mortgage on January 13, 2000. On July 31, 2004, First Franklin assigned that mortgage to JPMorgan Chase Bank, and the assignment of that mortgage was recorded on June 14, 2005. On December 18, 2004, the fire district executed a quitclaim deed to the property to First Properties, LLC. The quitclaim deed listed the homeowner as owner of the property. On December 23, 2004, First Properties recorded the quitclaim deed. JPMorgan filed an action seeking a judgment declaring that it was a bona fide holder for value of the property without notice of the foreclosure sale by the fire district. The trial court held that the foreclosure-sale deed was outside the chain of title because it did not name the homeowner as the owner and, therefore, did not provide notice of the foreclosure sale of the property. First Properties argued that JPMorgan, through its assignment, was on constructive notice of all documents of record in the probate court and, therefore, had constructive notice of the foreclosure-sale deed. This Court disagreed, holding that although the foreclosure-sale deed was recorded, that deed did not list the homeowner as the record owner:
“Thus, when the foreclosure-sale deed was indexed in the probate records the fire district was listed as both the grant- or and the grantee, and the undisputed evidence before the trial court showed that a search of the grantor-grantee index in the Jefferson County Probate Office would not have uncovered the foreclosure-sale deed. Consequently, the foreclosure-sale deed is a ‘wild deed,’ outside the chain of title, and the fact that it was recorded did not impart constructive notice to First Franklin or to JPMorgan. As explained in Wallace [v. Frontier Bank, NA], 903 So.2d [792,] 797 [(Ala.2004)]: ‘ “A purchaser is chargeable with notice of what appears on the face of the instruments in his or her chain of title. Ball v. Vogtner, 362 So.2d 894, 897 (Ala.1978); Union Oil Co. v. Colglazier, 360 So.2d 965, 969-70 (Ala.1978). However, an instrument outside a purchaser’s chain of title does not give constructive notice.” ’ (quoting [Rolling ‘R’ Constr., Inc. v.] Dodd, 477 So.2d [330] at 332 [(Ala.1985)]) (emphasis added). Accord Brannan v. Marshall 184 Ala. 375, 377, 63 So. 1007, 1007 (1913), which states:
“ ‘It is well settled by numerous decisions in this state that the registration of a conveyance executed by one who is a stranger to the title as it is shown by the records — that is, by a grantor who does not appear in the chain of recorded conveyances, or other title records, as one who has acquired an interest in the land in question — is not constructive notice to a subsequent purchaser in the regular chain of title. Fenno v. Sayre, 3 Ala. 458 [(1842)]; Gimon v. Davis, 36 Ala. 589 [(1860)]; Scotch Lumber Co. v. Sage, 132 Ala. 598, 32 South. 607, 90 Am. St. Rep. 932 [(1902)]; Tenn. C., I. & R. Co. v. Gardner, 131 Ala. 599, 32 South. 622 [(1902)].’
“Accordingly, First Properties’ argument that the foreclosure-sale deed pro *1021 vided constructive notice to JPMorgan is without merit.”
993 So.2d at 442-43 (footnote omitted). The Court also noted the impracticality of First Properties’ argument that JPMorgan was put on constructive notice of anything of record in the probate court no matter how difficult it was to find those documents. Citing a portion of JPMorgan’s brief, the Court noted:
“ ‘First Properties argues that all documents recorded in a probate court impart constructive notice to any buyer. Under that logic, a buyer would be required to inspect all recorded documents in searching title to property. The average number of documents recorded daily in Jefferson County is posted at the Probate Court each day, and is thus open to judicial notice. Considering both divisions, Birmingham and Bessemer, the daily number is just under 1,000, amounting to approximately 260,000 per year. A 20-year search, therefore, would require review of 5,200,000 documents. The implications of First Properties’ argument do not end there. It must be considered that such a search would include a duty to look [not only] for any instrument out of the record owner, but also for any document of any nature containing the legal description of the property. Recognizing that the legal description at issue in this case does not close, First Properties would subject a title searcher to the duty of inspecting 5,200,000 documents and tracing millions of miles of calls in legal descriptions, handicapped by the even more severe burden of being subject to notice imparted by incomplete legal descriptions.’ ”
993 So.2d at 441-42 n. 1.
In the present case, we cannot say that Barker and GMAC were on constructive notice of Bynum’s mortgage, which was executed and recorded under the incorrect name of “Davis Associates, LLC.”
Next, Bynum argues that “Davis & Associates, LLC” and “Davis Associates, LLC” are substantially similar so that the recording of Bynum’s mortgage under the name “Davis Associates, LLC” was sufficient to excite an inquiry in a reasonable person as to the existence of a mortgage. Bynum argues that the omission of the ampersand from the name does not remove his mortgage from the chain of title. Bynum compares the omission to the omission of a middle name or initial. However, as this Court discussed in Johnson v. Wilson & Co., supra, a mortgage executed under the name of “A.W. Dixon” is not notice that “J.W. Dixon” executed the mortgage. Similarly, a search for a mortgage executed under the name of “Davis & Associates, LLC” is not actual or constructive notice of a mortgage recorded under the name “Davis Associates, LLC.”

Conclusion

This Court in Norton, supra, over 100 years ago discussed indices in well bound books and recognized that the purpose of the indices was to afford facilities for a search of property records and that such purpose would fail if no reliance could be had upon the general indices. Although there were no computers in 1898 when Norton was decided, the principle remains the same — the indices are authorized, indeed required, and may be relied upon to ascertain the chain of title to real property. However, a computerized database relies on the alphabetical storage of names entered, and when someone incorrectly describes a mortgagor, neither the computer nor the probate clerk has any way, or duty, to ascertain the mistakes, and the probate clerk alphabetizes and stores the names of grantors, grantees, mortgagors, and mortgagees exactly as they are listed by the person creating the *1022 document; the probate clerk indexing the names and the type of transaction involved simply enters those names and conveyances as listed on the instrument.
One purpose of Alabama’s recording statutes and the applicable local acts relating to recording is to protect innocent parties from deeds that are not properly recorded. In this ease, as between By-num, who had the ability to protect his interest by filing a mortgage deed with the correct name of the mortgagor, and a bona fide purchaser relying on the recorded deeds, the bona fide purchaser prevails. Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.
COBB, C.J., and LYONS, WOODALL, STUART, SMITH, PARKER, and SHAW, JJ., concur.
MURDOCK, J., dissents.