This is an appeal from a judgment entering a permanent injunction in favor of plaintiff Frances Wells Brooker, individually and as trustee for William Todd Brooker and Patrick Blake Brooker, barring foreclosure of a mortgage held by defendant, First Alabama Bank, and enforcing an earlier decree of divorce.
The facts are as follows: On 18 July 1978, Frances Wells Brooker filed suit for divorce against her husband, William Thomas Brooker. In her complaint she alleged, as grounds for the divorce, incompatibility of temperament and irretrievable breakdown of the marriage. She further alleged that two children were born of the marriage, to-wit: William Todd Brooker, age 11 years, and Patrick Blake Brooker, age 9 years, and asked the court for care, custody and control of the children. Additionally, Mrs. Brooker alleged that both she and her husband had accumulated, during marriage, certain real and personal property which she asked the court to make a division of should a divorce be granted. On 1 August 1978, Mr. Brooker filed his answer, generally admitting all allegations of the complaint.
On 28 September 1978, Mrs. Brooker filed a petition for alimony and child support pendente lite. She was awarded that by decree of the trial court of 10 October 1978. On 6 November 1978, Mr. Brooker filed an amendment to his answer, together with a counterclaim praying for division and allocation of their property, bills, and debts. On 19 March 1979, the court granted a divorce and on 28 December 1979, a final decree was entered confirming the prior decree and awarding custody of the *Page 853 
children to Mrs. Brooker, divesting ownership of the jointly owned homestead of the parties, and placing title to it in Mrs. Brooker as trustee for the children. The decree further provided that jurisdiction was retained by the trial court including supervision of the trust so that a home and child support for the minor children might be provided until the youngest reached the age of 19. At that time the trustee would convey title to such real property or any proceeds from a sale thereof, jointly to the two minor children or survivor thereof, with title to such real property to vest immediately under the terms of the decree.
During pendency of the divorce action, on 8 September 1978, in order to secure an antecedent debt owed to First Alabama Bank, the defendant, Mr. Brooker, executed a mortgage of his undivided one-half interest in Lot 49 of High Forest No. 3, and the South half of Lot 50 of High Forest without that instrument being executed by Mrs. Brooker. The mortgage was recorded on 19 September 1978. At the time of recordation, and during the pendency of the divorce proceedings, First Federal Savings and Loan Association of Tuscaloosa held the first mortgage on the above-described property. Mrs. Brooker, the plaintiff, did not receive any of the proceeds of the loans made pursuant to the promissory note executed by Mr. Brooker to First Alabama Bank. At the time Mr. Brooker executed that mortgage, as noted, the property described in the mortgage constituted the homestead of Mr. and Mrs. Brooker and their two minor sons.
As of 28 December 1979, date of the final decree, Mr. Brooker was indebted to First Alabama Bank in the amount of thirty-two thousand dollars ($32,000) principal and four thousand, three hundred, ninety-three and 19/100 dollars ($4,393.19) interest. The Bank scheduled a foreclosure sale to be held on 14 February 1980. For three weeks prior to that date the Bank had advertised the foreclosure sale in a Tuscaloosa County paper.
On 12 February 1980, Mrs. Brooker filed for, and was granted, a temporary restraining order, followed by entry of a preliminary injunction to enjoin the foreclosure proceedings, as well as adding First Alabama Bank as an additional party to the divorce action. Mrs. Brooker filed and served on opposing counsel, on 16 September 1980, an amendment to the application for temporary restraining order, and a motion for a preliminary injunction. The court held a hearing regarding the injunction on 29 September 1980, at which time the parties stipulated to certain facts and placed in evidence the depositions of two witnesses: one of Mr. Brooker and the other of Sam Faucett, who was President of First Alabama Bank at the time of the pertinent transaction involving that Bank. No oral testimony was taken.
On 30 December 1980, the trial court, in its final decree, found that, at the time the Bank obtained from Mr. Brooker his execution of the mortgage on his undivided one-half interest in the real property constituting the homestead, the Bank had actual notice of the pending divorce action wherein Mrs. Brooker, because of her demand for a division of the real property, had placed in issue the ultimate ownership of the homestead property. The court further found the Bank not to be a bona fide mortgagee without notice of possible adverse claims to title to the property at the time it obtained Mr. Brooker's execution of the mortgage because of actual notice to the Bank of the pending divorce action. Whereupon, the trial court granted a permanent injunction prohibiting the Bank from foreclosing its mortgage. We affirm.
This cause was tried and submitted for final decree on two depositions admitted by stipulation, a written stipulation of facts, and certain oral stipulations made by the attorneys before the court. No oral testimony was taken before the trial court. The rule pertaining to this court's scope of review is quite clear. When the cause is tried in the court below in the manner described above, this court indulges no presumption that the trial court correctly applied the law to the facts and this court will review the evidence de novo. Stiles v. *Page 854 Brown, 380 So.2d 792 (Ala. 1980); Perdue v. Roberts, 294 Ala. 194, 314 So.2d 280 (1975); Smith v. Dalrymple, 275 Ala. 529,156 So.2d 622 (1963).
In its assignment of errors, appellant Bank contends the doctrine of lis pendens does not apply because the claim for child support, ultimately granted by vesting title to the subject real estate in trust for the children, did not sufficiently appear in the pleadings at the time the mortgage was taken by the Bank to put it on notice that the real estate, then owned by Mr. and Mrs. Brooker, might be divested from them and vested in the children. Secondly, appellant contends the claim of Mrs. Brooker, found in the pleadings, for a division of the real and personal property lacks sufficient specificity to come within the lis pendens doctrine. We find no merit in these contentions.
The dispositive issue in this appeal is whether a Bank, which has actual knowledge of (1) the fact that property is jointly owned by husband wife and (2) the fact that a divorce action is pending between husband wife, which prays for a division of the property, both real and personal, and accepts a mortgage on the husband's undivided interest without the wife's knowledge or consent, is a "bona fide mortgagee" that takes title free from the effect of disposition of the property later made by the trial court in the divorce action.
Section 35-4-131, Code 1975, establishes the procedure for filing of notice of lis pendens when any civil action has been brought in any court to enforce any right to, or interest in, land.
Admittedly, in this case no lis pendens notice was filed prior to the recordation of the mortgage from Mr. Brooker to the Bank; however, this is not determinative, because from the facts placed in evidence, the lower court justifiably found the Bank, through its officers, Sam Faucett and Boyd Horn, had actual notice of the pending divorce action.
Section 34-4-135, Code 1975, provides:
 "If the notice required by subsections 35-4-131 and 35-4-132 shall not be entered in the lis pendens record, the action, proceeding or application shall not affect the rights of a bona fide purchaser, lessee or mortgagee of any interest in any such land or any person then or thereafter asserting a lien against such land unless he or they have actual notice of the action, proceeding, levy or application." (Emphasis added.)
Several precedents establish that actual notices to the Bank are just as effective as a filed lis pendens to make the Bank's interest as mortgagee vulnerable to the outcome of the pending divorce action.
In Lee v. Macon County Bank, 233 Ala. 522, 172 So. 662
(1937), this court held that a purchaser at a foreclosure sale who had "actual knowledge" of a pending suit could not be abona fide purchaser for value in spite of the fact that no lispendens was filed.
 "What, then of actual knowledge, where there was no compliance with the lis pendens statute . . .? If, therefore, there was actual notice, it is immaterial whether the statutory notice was or was not given." Lee v. Macon County Bank, supra.
See also, Crane v. Wilson Lumber Co., 288 Ala. 439,261 So.2d 877 (1972), and Batson v. Etheridge, 239 Ala. 535, 195 So. 873
(1940).
The following, from the deposition of Mr. Brooker, supports affirmance of the trial court's decision:
 "Q. Did you tell Sam Faucett or did he know somehow, that you — that a divorce action had been filed and it was pending?
"A. Oh yeah. He knew that.
"Q. He knew that before September?
 "A. Well, I don't know how, you know, how much in advance or anything like that, but —
 "Q. At the time you signed the mortgage, did he know you were involved in divorce litigation?
"A. Yes.
". . . *Page 855 
 "Q. Did Boyd also know that you were getting a divorce?
"A. Yes.
"Q. That a divorce suit had been filed?
"A. Well, they knew I was getting a divorce."
The following from the deposition of Faucett, President of the Bank, clearly establishes he was unable at the time of his deposition to state with certainty that he did not know of the pending divorce action at the time the mortgage was executed.
 "Q. Did Mr. Brooker say anything about the fact that they were in the process of getting a divorce, not that you knew about, but what you were told by him?
 "A. He indicated there were some problems. Now, whether he told me they were getting a divorce or not exactly, I don't remember. Possibly he did.
". . .
 "Q. Did you make any notices of your conversation with him at that time that you filed?
"A. I don't have any in here.
"Q. What I'm —
 "A. Let me see what this is. No. This may answer the question you asked earlier that I couldn't recall. I have an appraisal in here that I wrote up for the file on it. In that file I said Mr. and Mrs. Brooker were in the process of getting a divorce so he evidently did mention it. We have a continuing guarantee for her but her attorney refuses to let her sign this mortgage.
"Q. That is the 18th of October?
"A. 18th of October, 1978.
". . .
 "Q. And it was done after the fact of taking the mortgage, but I assume it represents information that was given to you at the time of the mortgage?
"A. That's true.
"Q. He didn't come back in and talk to you?
"A. No.
 "Q. So, refreshing your recollection, that would mean Mr. Brooker told you at the time you took the mortgage that he was getting a divorce.
 "A. I would assume that from this. I don't remember him saying so.
"Q. But your note would indicate that?
 "A. Well, I'm not sure whether that at the time I asked for the mortgage that I knew it and took the mortgage, when I found out she wouldn't sign it, I think is where I obtained this information, when I found out she would not sign the mortgage.
 "Q. You had to find out she wouldn't sign it before preparing a mortgage because you only prepared it for half interest?
"A. Yes.
 "Q. Apparently it means at the time they took the mortgage, it means you knew they were getting a divorce.
"A. It means I knew she wouldn't sign it."
The evidence, as set out above, is uncontradicted on the record. We think the testimony, and those legitimate inferences flowing therefrom, are sufficient upon which to base a finding that First Alabama Bank had "actual notice" or "actual knowledge" of the pending divorce action.
In order for the Bank to avail itself of the status of a bonafide purchaser or mortgagee for value, our authorities hold certain facts must be established clearly, distinctly, and without equivocation: (1) that it is the purchaser of the legal as distinguished from the equitable title; (2) that it purchased it in good faith: (3) that it parted with value as consideration therefor by paying money, or some other thing of value, assuming liability or incurring injury; (4) and that it had no notice, and knew no fact sufficient to put it on inquiry as to another party's equity, either at the time of the purchase, or at or before, the time it paid the purchase money or otherwise parted with such value. First National Bank ofBirmingham v. Culberson, 342 So.2d 347 (1977); Borden v. Case,270 Ala. 293, *Page 856 118 So.2d 751 (1960). Notice of a claim of interest in real property can be inferred from knowledge of facts sufficient to put a reasonably prudent person on inquiry, which if pursued, would lead to the discovery of the title asserted by some other party, Murphree v. Henson, 289 Ala. 340,267 So.2d 414 (1972); or otherwise stated: knowledge of facts which would lead an ordinarily prudent person to further inquiry about the title of the vendor. Dewyer v. Dover, 222 Ala. 543,133 So. 581 (1931).
We find that because the Bank did have notice of the pending divorce action, or sufficient notice to put it on inquiry, it fails to fulfill the fourth element of a bona fide purchaser or mortgagee for value, and therefore cannot claim that status. We need go no further.
Appellant also raises the issue of the correct amount of homestead exemption should the mortgage be held valid. Because we find the mortgage invalid, we need not resolve that question.
We deem it appropriate to observe that this appeal properly should have been taken to the Court of Civil Appeals. The rationale forming the basis of this court's decision in In reSandra Hill Tetter v. State, 358 So.2d 1046 (Ala. 1978), and later decisions of this court, the Court of Civil Appeals and the Court of Criminal Appeals, logically dictates that appeals lie to the appropriate appellate court based upon the nature of the underlying action out of which the particular order, judgment, or decree, is entered or issued. In Tetter, the contempt order was entered because of an incident that occurred during the trial of a divorce action.
However, as it has happened all too frequently in the past, it was not noted by the particular justice to whom the appeal was assigned until preparation of an opinion was underway, or in some instances in the past it was not noted until oral argument was taking place. As a result, in an effort to dispose of appeals as expeditiously as feasible, this court proceeded to a decision in those instances, as we do in this case.
The trial court ruled correctly on the issue presented to it and therefore its judgment is due to be affirmed.
AFFIRMED.
TORBERT, C.J., and FAULKNER, JONES and ADAMS, JJ., concur.