52 A.3d 130

**Shelia MURPHY, Personal Representative
of the Estate of Dorothy Mae Urban**

v.

**Jeremy K. FISHMAN, et al.**

**No. 786, Sept. Term, 2011.**

Court of Special Appeals of Maryland.

Sept. 4, 2012.

270

To determine bona fide purchaser status, notice is assessed at the time that a party acquires an interest in the property.

Charles Bagley, IV (Matthew S. Ballard, Bagley & Rhody, PC, on the brief) Annapolis, MD, for appellant.

Brent M. Ahalt (L. Paul Jackson, McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, PA, on the brief) Greenbelt, MD, for appellee.

Panel: EYLER, DEBORAH S. WATTS, KATHLEEN G. COX (Specially Assigned), JJ.

WATTS, J.

The Circuit Court for Anne Arundel County denied the motion of appellant, Shelia Murphy, Personal Representative of the Estate of Dorothy Mae Urban,[1] to stay and dismiss a foreclosure action that had been instituted by appellees, Jeremy K. Fishman, Samuel D. Williamowsky, and Erica T. Davis Ruth, Substitute Trustees. Appellant noted an appeal raising five issues, which we rephrase and consolidate into one:[2]

---

1. Murphy is Urban's daughter.

2. Appellant phrased the issues as follows:
 I. Did the Circuit Court err in denying Defendant's Motion to Stay or Dismiss?

Whether the circuit court erred in denying appellant's Motion to Stay and Dismiss?

We answer the question in the affirmative, and shall, therefore, reverse and remand with instructions to grant the motion to dismiss.

## FACTUAL AND PROCEDURAL BACKGROUND

On December 1, 2010, appellees filed with the circuit court an Order to Docket a foreclosure action for real property located at 229 Dale Road, Pasadena, Maryland ("the Property"), naming as defendants, appellant and Robert Street, Sr., Urban's son. The foreclosure action concerned a refinance of the Property by Street, the mortgagor, of an existing mortgage in Urban's name. In the Order to Docket, appellees stated that the foreclosure was based on a Deed of Trust that Street had executed on February 18, 2008, in closing on a loan of $91,350 from 1st Chesapeake Home Mortgage, LLC ("the Street Deed of Trust").[3] Acting on behalf of the owner of the Street Deed of Trust—MidFirst Bank ("the Lender")—appel-

---

 II. Did the Court err in finding that the Plaintiff has a valid interest in the subject property to proceed with foreclosure?
 III. Did the Court err in allowing the Plaintiff to proceed with the equitable foreclosure action when the underlying deed of trust upon which Plaintiff bases its standing was obtained after the filing of the complaint to nullify deed and resulting *Lis Pendens* as to the subject property?
 IV. Did the Court err in finding that the Plaintiff had a higher equitable claim to the property than the Defendant?
 V. Does the finding of a confidential relationship in an *inter vivos* action and finding that the grantee failed to meet their burden of rebutting the resulting presumption of invalidity upon a finding of confidential relationship have the effect of the Court finding that the underlying deed at issue is null and void and of no legal effect?

**3.** Shortly after the Street Deed of Trust was executed, on March 17, 2008, a Certificate of Satisfaction was recorded, showing that the proceeds from the Street Deed of Trust were used to satisfy a prior Deed of Trust executed by Urban in favor of CitiFinancial Inc. on December 6, 2004, and recorded among the Land Records of Anne Arundel County in Liber 15674 at Folio 307 on December 7, 2004. On April 2, 2008, the Street Deed of Trust was recorded among the Land Records of Anne Arundel County in Liber 20027 at Folio 544.

lees instituted the foreclosure proceedings against the Property, alleging that the mortgage had been in default since May 1, 2010, because of the "mortgagor(s)['] and/or grantor(s)['] failure to make the regular monthly mortgage payment[s.]"

On December 20, 2010,[4] appellant filed a Motion to Stay and Dismiss the foreclosure action, alleging that Urban's Estate ("the Estate") was the Property's lawful owner. Appellant asserted that Street had no ownership interest in the Property because, in a separate civil action ("the Estate Lawsuit"), the circuit court allegedly "invalidat[ed a] May 30, 2007 Deed [from Urban to Street] and impose[ed] a constructive trust over the Property[.]" Appellant argued that the complaint filed in the Estate Lawsuit created a *lis pendens*,[5] and that the lien upon which appellees sought to foreclose was invalid.

In support of the Motion to Stay and Dismiss, appellant attached copies of documents that had been filed in the Estate Lawsuit, alleging the following: (1) on May 30, 2007, Urban, as grantor, conveyed the Property to Street, as grantee, by deed for zero monetary consideration ("the 2007 Deed"); (2) on May 31, 2007, the 2007 Deed was recorded; (3) on June 5, 2007, Urban died; and (4) on June 11, 2007, the Estate was opened, appointing appellant as its personal representative.

---

**4.** The record reflects that the circuit court returned the Motion to Stay and Dismiss filed on December 20, 2010, to appellant because it was missing the required attorney appearance fee. On January 12, 2011, appellant re-filed the Motion.

**5.** In *Weston Builders & Developers, Inc. v. McBerry, LLC*, 167 Md.App. 24, 29–30, 891 A.2d 430, *cert. denied*, 392 Md. 726, 898 A.2d 1005 (2006), this Court explained *lis pendens* as follows:

Lis pendens is a common law doctrine. Literally, it is Latin for "lawsuit pending." ... The two related but distinct purposes of lis pendens are revealed by definitions 2 and 3 of it in Black's Law Dictionary (7th ed.1999):

2. The jurisdiction, power, or control acquired by a court over property while a legal action is pending.

3. A notice, recorded in the chain of title to real property, required or permitted in some jurisdictions to warn all persons that certain property is the subject matter of litigation, and that any interests acquired during the pendency of the suit are subject to its outcome.

On January 3, 2008, appellant filed a Complaint to Nullify or Declare [the 2007] Deed Null and Void in the Estate Lawsuit in the circuit court, seeking to invalidate the 2007 Deed. In the complaint, appellant alleged that at the time of execution of the 2007 Deed, Urban was seventy-three-years-old, "in declining physical and mental condition, was deemed to not be competent and died six days later ... from breast cancer." According to appellant, Street influenced Urban to change her will and to deed the Property to him. In the complaint, appellant sought to: (1) impose a constructive trust on the Property, (2) have the Property returned to the Estate to be distributed according to Urban's will, and (3) nullify and void the 2007 Deed "on the grounds of breach of confidential relationship, lack of capacity, lack of due execution, undue influence, and fraud." On February 18, 2008, Street obtained the Street Deed of Trust from 1st Chesapeake Home Mortgage.

Litigation continued in the Estate Lawsuit. On March 15, 2010, the circuit court issued the following Order ("the Estate Order"), stating:

In accordance with the oral opinion rendered in open court on Monday, March 15, 2010, it is hereby, it is this 15th day of March, 2010, by the Circuit Court for Anne Arundel County, Maryland:

ORDERED, that a constructive trust be imposed on the [Property]; and it is further

ORDERED, that [appellant] be appointed Trustee of the constructive trust in order to transfer [the Property] to the Estate of Dorothy Mae Urban and to execute any deed in order to effectuate the transfer to the Estate; and it is further

ORDERED, that defendant['s] request for relief is hereby denied.

On May 25, 2010, appellant, by deed, conveyed the Property to the Estate ("the 2010 Deed"). On June 1, 2010, the 2010 Deed was recorded in the Land Records of Anne Arundel County.

On January 7, 2011, in the foreclosure action, appellees filed an Opposition to the Motion to Stay and Dismiss and Memorandum of Points and Authorities in support of the Opposition. In the Opposition, appellees contended that, pursuant to Maryland Rule 14–211, a motion to stay and dismiss must be filed under oath or supported by affidavit, and that the Motion to Stay and Dismiss filed by appellant failed to satisfy the requirement, as it was not filed under oath or supported by affidavit. As to the merits, appellees argued that appellant misconstrued the effect of the Estate Order, alleging:

> Although [appellees] concede that [the Estate Order] imposed a Constructive Trust over the Property (which is the subject of this foreclosure action) and that [Street] does not have a current ownership interest in the Property, the [Estate] Order did not invalidate or vitiate the [2007 Deed] wherein the Property was conveyed to [Street]. Said [Estate] Order only established a Constructive Trust, appointed [appellant] as Trustee of same, and permitted the Trustee of said Trust to convey the Property by execution of any Deed to the Estate[.]

Appellees argued that Street retained an ownership interest in the Property until the execution of the 2010 Deed. Appellees pointed out that the Estate Order granted only one of appellant's requests for relief—namely, the establishment of a constructive trust over the Property—and did not grant other requests for relief, including a declaration that Urban owned the Property at the time of her death (thereby making it an asset to be distributed to the Estate) or a declaration that the 2007 Deed was null and void. Appellees argued that the Street Deed of Trust had not been declared null and void or vitiated in the Estate Lawsuit. Accordingly, appellees requested that the Motion to Stay and Dismiss be denied.

On May 16, 2011, the circuit court held a hearing on the Motion to Stay and Dismiss and Opposition.[6] At the beginning of the hearing, appellant introduced a transcript of the

---

**6.** Although the hearing's transcript lists the date as "August 1, 2011," the record reflects that the hearing occurred on May 16, 2011.

March 15, 2010, hearing in the Estate Lawsuit into evidence.[7] During the hearing, appellant argued that, in the Estate Lawsuit, the circuit court "found" that Urban owned the Property at the time of her death. Appellant contended that the Estate Order, permitting the constructive trust, was retroactive dating back to the 2007 Deed.

Appellees contended that, in the Estate Lawsuit, the circuit court did not declare the 2007 Deed null and void, but rather merely established a constructive trust. As to the issue of notice and *lis pendens,* appellees argued:

> Constructive notice which is what the *lis pendens* [ ] provided is exactly that, it's constructive. There is no allegation of actual knowledge [on behalf of the Lender]. There's no evidence of actual knowledge here. There's no indication that anybody did this, from the [L]ender's perspective, with any bad intent. In fact I think one can gather from looking at it that the [L]ender wouldn't have necessarily made the loan if they believed that it wasn't good title.
>
> So they believed it was. And that doesn't take away their clean hands because there was an error by some third party [the title company] who is not here today.

Appellees contended that because the Street Deed of Trust paid off Urban's original loan in the amount of $59,000 at the time of settlement, the Lender was "in the position of the prior Deed of Trust through equitable subrogation." As to whether the constructive trust in the Estate Lawsuit was prospective or retroactive, appellees argued that the construc-

---

7. The March 15, 2010, hearing transcript reflects that, in the Estate Lawsuit, the circuit court ruled that it was "persuaded by clear and convincing evidence that a confidential relationship existed between" Urban and Street at the time the 2007 Deed was executed. The circuit court further found that Street "failed to persuade th[e] Court that the [2007 Deed] was indeed fair and reasonable or that the transfer was the free and uninfluenced act of Ms. Urban with full knowledge of all of the circumstances surrounding the transfer and with its contents." The circuit court then read the proposed Estate Order aloud, providing for the imposition of a constructive trust and appointment of appellant as trustee of the constructive trust.

tive trust was prospective and that, had "the [Estate] Order [been] done to nullify and void the initial deed, as was requested in the Complaint, th[e] subsequent deed out of the constructive trust [the 2010 Deed] would not have been necessary."

At the end of the hearing, the circuit court requested that counsel submit case law—only "citations"—by the close of business on May 17, 2011, on the issue of whether a confidential relationship rendered the 2007 Deed void.[8]

On May 19, 2011, the circuit court issued an Order and Opinion denying the Motion to Stay and Dismiss. In the Opinion, the circuit court stated:

> While it is clear from a review of the oral opinion that Judge Jaklitsch found the mortgagor obtained the property by undue influence, Judge Jaklitsch never explicitly stated that the conveyance was void *ab initio* or that the lien was invalidated. In fact, even when deeds are set aside on the basis of a mortgagor's fraudulent conduct, foreclosing mortgagees may still be entitled to protection as bona fide purchasers. *Wash. Mut. Bank v. Homan*, 186 Md.App. 372 [974 A.2d 376] (2009). This rule extends to cases where the fraudulent conduct is the exercise of undue influence by a child over a grantor parent. See *Julian v. Buonassissi*, 414 Md. 641, 667 [n. 15, 997 A.2d 104] (2010), citing *Highberger v. Stiffler*, 21 Md. 338, 352–53 (1864) in turn holding that contracts and conveyances are voidable and may be set aside, except as to third parties, when a confidential relationship is abused. Such protection, however, may [be] granted to third party lenders only when it is clear that the lender acted in good faith and without notice of adverse claims on the property. *Wash. Mut. Bank v. Homan*, 186 Md.App. at 396 [974 A.2d 376].
>
> [Appellant] argues that the lender did not act in good faith and without notice of adverse claims on the property

---

8. The record reflects that the parties complied with the circuit court's request.

because at the time of the loan's closing the property was subject to the pending "undue influence" litigation. This litigation, [appellant] argues, was or should have been discovered by [appellees] through a properly conducted title search prior to closing. [Appellees] argue that they did not have actual notice of such litigation and, even if they should have, their negligence in not discovering the pending litigation does not amount to bad faith because they lacked the requisite intent. See *Jones v. State,* 288 Md. 618, 626 [420 A.2d 1241] (1980), citing *Illinois v. Sommerville [Sommerville ],* 410 U.S. 458, 93 S.Ct. 1066 [35 L.Ed.2d 425] (1973), in turn holding the intent implicit in "bad faith" and "negligence" are mutually exclusive.

Because the mortgagee bank's actual notice of the pending litigation or bad faith are disputed material fact, the Court will deny [appellant]'s Motion to Stay and Dismiss at this time.

On June 15, 2011, appellant noted a timely appeal.

## DISCUSSION

### (1) Contentions

Appellant contends that the circuit court erred in denying the Motion to Stay and Dismiss because the Lender "has no claim to the Property, legal or equitable, [that] allow[s] it to seek to foreclose on the Property[.]" Appellant argues that the Estate Order had the "effect" of declaring the 2007 Deed void *ab initio.* Appellant maintains that the filing of the complaint in the Estate Lawsuit acted as *lis pendens,* providing constructive notice of the lawsuit to the Lender. According to appellant, because the doctrine of *lis pendens* applies, the Lender is not a bona fide purchaser and should not be afforded the protections to which a bona fide purchaser is entitled.

Appellant argues that a foreclosure is an equitable remedy requiring "clean hands," and, in this case, the Lender does not have an equitable claim to the Property because the constructive trust was imposed as a result of Street's fraud and

dishonesty. Appellant maintains that the equities involved in the case favor granting the Motion to Stay and Dismiss. Appellant maintains that the Lender is not entitled to equitable subrogation based on the circumstances of the case.

Appellant contends that, in the Estate Lawsuit, the circuit court found that Street was in a confidential relationship with Urban and exercised undue influence to obtain the 2007 Deed. Appellant argues that this determination was the equivalent of "finding the [2007] Deed to be null and void and of no legal effect." According to appellant, where the grantee fails to demonstrate the validity of the conveyance and a trial court finds the existence of a confidential relationship, "the end result must be that the conveyance is not valid as it was not the 'free, voluntary, and independent act' of the grantor." Appellant asserts that the establishment of the constructive trust was the appropriate remedy given the fraud finding. In sum, appellant maintains that the circuit court erred in denying the Motion to Stay and Dismiss, and that the Lender is unable to proceed with foreclosure because it is not a bona fide purchaser.

Appellees respond that appellant's Motion to Stay and Dismiss was properly denied as it was not under oath or supported by affidavit as required by Maryland Rule 14–211. Appellees argue that this deficiency alone provides a "sufficient basis for the denial of relief."

Appellees contend that the circuit court properly denied the Motion to Stay and Dismiss because the circuit court's ruling in the Estate Lawsuit did not invalidate the 2007 Deed or the Street Deed of Trust. According to appellees, the Estate Order granted only one of appellant's requests for relief— imposition of a constructive trust—and failed to provide the other requested relief, including a finding that the 2007 Deed was null and void and that the Property was owned by Urban upon her death. Appellees argue that, had the 2007 Deed been found to be invalid or void *ab initio,* "there would [have been] absolutely no need to order the appointment of a trustee to transfer the Property to the Estate[.] Instead, the proper-

ty would, by operation of law and court order, be in the name of the Estate."

Appellees contend that, given the ruling in the Estate Lawsuit, the doctrine of *lis pendens* did not affect the validity of the Street Deed of Trust. Appellees argue that, pursuant to the doctrine of lis pendens, a person who acquires an interest in real property while litigation is pending is bound by the litigation's outcome, and that, in this case, the Estate Lawsuit's outcome did not affect the Lender's title. Appellees assert that, because the Estate Order required transfer of the Property to the Estate, "the Estate took the Property as is, as encumbered" by the Street Deed of Trust, and the lien created by the Street Deed of Trust remained on the Property.

Appellees contend that equity does not favor appellant over the Lender because the Estate "accepted the benefit of the payoff" of the prior deed of trust executed by Urban, as evidenced by the Certificate of Satisfaction. Appellees argue that the Lender acted with "clean hands" in the matter, giving value for the Street Deed of Trust, and that the majority of the proceeds from the Street Deed of Trust "inured to the benefit of the Estate." Appellees assert that there is no evidence suggesting that the Lender had actual notice of the Estate Lawsuit prior to taking its interest in the Property. Appellees maintain that, "[a]t a minimum, the doctrine of equitable subrogation allows the Lender to foreclose from the position of the" prior deed of trust that Urban had executed.

Appellees maintain that the "finding of a confidential relationship does not, by itself, void a transaction particularly where [a trial] court fashions an alternate remedy." Appellees contend that appellant relies upon case law that does not support the proposition that a trial court must declare a deed null and void upon finding the existence of a confidential relationship. Appellees argue that, in the Estate Order, the circuit court, by ordering that a deed be executed transferring the Property to the Estate, "gave validity to the initial transfer by [the 2007] Deed." Accordingly, appellees contend that the circuit court did not err in denying the Motion to Stay and Dismiss.

### (2) Standard of Review

■ "When considering a motion to dismiss, a trial court is required to assume the truth of all of the well-pled facts in the complaint and attached exhibits, and the 'reasonable inferences drawn from them, in a light most favorable to the nonmoving party.'" *120 W. Fayette St., LLLP v. Mayor of Baltimore,* 407 Md. 253, 261, 964 A.2d 662 (2009) (citation omitted).

■ In *Bechamps v. 1190 Augustine Herman, LC,* 202 Md.App. 455, 460, 32 A.3d 542 (2011), a case involving a grant of a motion to stay filed pursuant to Maryland Rule 14–211, we stated: "We review a trial court's decision to stay a proceeding for an abuse of discretion. Whether to grant or deny a stay of proceedings is a matter within the discretion of the trial court, and only will be disturbed if the discretion is abused." (Citation and internal quotation marks omitted). In *Svrcek v. Rosenberg,* 203 Md.App. 705, 720, 40 A.3d 494 (2012), we stated:

> [A] borrower may file a motion to stay the sale of the property and dismiss the foreclosure action [pursuant to Maryland Rule 14–211(a)(1) ]. In other words, the borrower may petition the court for injunctive relief, challenging the validity of the lien or ... the right of the [lender] to foreclose in the pending action. The grant or denial of injunctive relief in a property foreclosure action lies generally within the sound discretion of the trial court. Accordingly, we review the [trial] court's denial of a foreclosure injunction for an abuse of discretion. We review the trial court's legal conclusions *de novo.*

(Omissions and third alteration in original) (citations and internal quotation marks omitted).

### (3) Law

### (a) Motions to Stay and Dismiss Pursuant to Maryland Rule 14–211

Maryland Rule 14–211 provides in pertinent part:

(a) Motion to stay and dismiss.

(1) Who may file. The borrower, a record owner, a party to the lien instrument, a person who claims under the borrower a right to or interest in the property that is subordinate to the lien being foreclosed, or a person who claims an equitable interest in the property may file in the action a motion to stay the sale of the property and dismiss the foreclosure action.

. . .

(3) Contents. A motion to stay and dismiss shall:

(A) be under oath or supported by affidavit;

(B) state with particularity the factual and legal basis of each defense that the moving party has to the validity of the lien or the lien instrument or to the right of the plaintiff to foreclose in the pending action;

(C) be accompanied by any supporting documents or other material in the possession or control of the moving party and any request for the discovery of any specific supporting documents in the possession or control of the plaintiff or the secured party;

. . .

(e) Final determination. After the hearing on the merits, if the court finds that the moving party has established that the lien or the lien instrument is invalid or that the plaintiff has no right to foreclose in the pending action, it shall grant the motion and, unless it finds good cause to the contrary, dismiss the foreclosure action. If the court finds otherwise, it shall deny the motion.

 Failure to comply with the requirements set forth in Maryland Rule 14–211 is a proper ground for denial of a motion to stay or dismiss. In *Svrcek*, 203 Md.App. at 721, 40 A.3d 494 this Court held that the trial court did not abuse its discretion in denying a property owner's motion to stay the sale and dismiss the foreclosure proceedings where the motion was filed after the deadline set forth in Maryland Rule 14–211. The trial court found that the property owner failed to show good cause to excuse non-compliance with the filing deadline.

*Id.* This Court held that, even if the trial court had found good cause for the late filing, "the [trial] court would have acted properly in denying the motion because [the motion] failed to state a legitimate defense to the validity of the lien or the lien instrument and the right of the appellees to foreclose." *Id.* at 722, 40 A.3d 494 (citation omitted).

### (b) Constructive Trusts and Confidential Relationships

In *Porter v. Zuromski,* 195 Md.App. 361, 368–69, 6 A.3d 372 (2010), with Judge Robert A. Zarnoch speaking for this Court, we discussed the remedy of a constructive trust and the effect of demonstrating a confidential relationship, stating:

> A constructive trust is a remedy that converts the holder of legal title to property into a trustee for one who in good conscience should reap the benefits of the property. Its purpose is to prevent the unjust enrichment of the holder of the property. This remedy applies where a property has been acquired by fraud, misrepresentation, or other improper method, or where the circumstances render it inequitable for the party holding the title to retain it. Ordinarily, such factors must be shown by clear and convincing evidence. However, this rule changes, once a confidential relationship is shown. Then, a presumption arises that confidence was placed in the dominant party and that the transaction complained of resulted from fraud or undue influence and superiority or abuse of the confidential relationship by which the dominant party profited. This presumption shifts the burden to the defendant to show the fairness and reasonableness of the transaction.

(Citations, internal quotation marks, and footnotes omitted). We further explained that a confidential relationship "exists where one party is under the domination of another or where, under the circumstances, such party is justified in assuming that the other will not act in a manner inconsistent with his or her welfare." *Id.* at 369 n. 12, 6 A.3d 372 (citation and internal quotation marks omitted). In *Porter, id.* at 376, 6 A.3d 372 we upheld the trial court's imposition of a constructive trust and its declaration that each party had an undivided

interest in the property. The case involved an unmarried couple who had been romantically involved for over a decade. *Id.* at 364–65, 6 A.3d 372. The woman had paid half of the expenses for the home that the couple shared, although only the man was named on the deed and mortgage. *Id. See also Figgins v. Cochrane,* 403 Md. 392, 395–96, 410–11, 414, 942 A.2d 736 (2008) (The Court of Appeals held that-having found that a confidential relationship existed between the petitioner and her deceased father and that the petitioner failed to show that the transfer of the home was fair and not the result of her undue influence on her father-the trial court properly imposed a constructive trust on the home of the petitioner's deceased father, appointed a constructive trustee, and ordered the trustee to convey the home to the deceased father's personal representative.)

### (c) Void *Ab Initio* vs. Voidable Deeds and Bona Fide Purchasers

In *Scotch Bonnett Realty Corp. v. Matthews,* 417 Md. 570, 583, 587, 11 A.3d 801 (2011), the Court of Appeals discussed the distinction between a deed void *ab initio* and a voidable deed, stating:

> [T]he void/voidable distinction plays a central role in the protection under the recording acts: a person otherwise qualifying as a bona fide purchaser under the recording act receives no protection under a void deed. On the other hand, a person otherwise qualified as a bona fide purchaser for value does receive protection in purchasing from one whose title is merely voidable. Deeds which appear to be valid on their face, but turn out to be void, present insurmountable off-the-record risks for persons relying on the state of record title.... The two classic cases of void deeds are those involving lack of delivery and forgery.
>
> . . .
>
> The distinction between a void contract and a voidable one is especially important in situations involving deeds; once a deed is considered void *ab initio* or of no legal effect, there are lasting consequences to everyone in the subse-

quent chain of title. As a result, we have been circumspect at common law in finding a deed void *ab initio* and have *limited our rulings* regarding voidness to circumstances that go to the face of the deed, e.g., forgery.

(Citations and internal quotation marks omitted). In other words, "[a] deed obtained through fraud, deceit or trickery is voidable as between the parties thereto, but not as to a *bona fide* purchaser. A forged deed, on the other hand, is void *ab initio*." *Harding v. Ja Laur Corp.*, 20 Md.App. 209, 214, 315 A.2d 132 (1974).

In *Wash. Mut. Bank v. Homan*, 186 Md.App. 372, 394–97, 974 A.2d 376 (2009), with Judge Arrie W. Davis speaking for this Court, we explained the concept of a bona fide purchaser, stating:

> It is a well-settled principle that one who purchases real property without notice of prior equities is protected as a *bona fide* purchaser for value. [T]he Court of Appeals explained that the
>
> > essential elements of any definition of an innocent purchaser are: (a) That he [or she] must have given value for the property; (b) that he [or she] must have dealt in good faith with respect to the purchase; and (c) **without notice or knowledge of any infirmity in the title of his [or her] vendor.**
>
> ... under Maryland law, legal title to land does not pass until a deed is properly executed and recorded, and ... until this is done a vendee's equity in property is subject to destruction by a conveyance of the legal title to a *bona fide* purchaser without notice. Stated alternatively,
>
> > [t]he general rule is that a purchaser of real estate takes subject to outstanding equitable interests in the property, which are enforceable against him [or her] to the same extent that they are enforceable against the vendor, where the purchaser is not entitled to protection as a *bona fide* purchaser, and one who purchases the equitable title to real estate is not protected as a *bona fide* purchaser where he [or she] receives notice of a prior equity

before he [or she] acquires the legal title; or where he [or she] receives notice before he [or she] has paid all or substantially all of the purchase price.

. . .

Maryland cases have treated lenders who secure their interests with a mortgage or deed of trust as entitled to the protections available to *bona fide* purchasers for value, where such lenders were without notice of the mortgagor's fraudulent conduct.... [T]he *Court of Appeals observed:*

> It is well settled that in circumstances where a deed is set aside for fraud, **a mortgagee not a party to the fraud is entitled to the protection afforded a *bona fide* purchaser by a court of equity, to the extent of his [or her] interest.** But as was said ... a Court of Equity will deal with the conveyance sought to be vacated on special terms, and will allow the instrument to stand as security for the money actually paid by the grantee.

Other jurisdictions have also treated mortgagees as entitled to the protections of *bona fide* purchasers for value, under appropriate circumstances. For example, in *First Alabama Bank v. Brooker*, 418 So.2d 851, 855 (Ala.1982), the Supreme Court of Alabama set forth the following criteria for affording a bank such protections:

> In order for the Bank to avail itself of the status of a bona fide purchaser or mortgagee for value, our authorities hold certain facts must be established clearly, distinctly, and without equivocation: (1) that it is the purchaser of the legal as distinguished from the equitable title; (2) that it purchased it in good faith; (3) that it parted with value as consideration therefor by paying money, or some other thing of value, assuming liability or incurring injury; (4) and **that it had no notice, and knew no fact sufficient to put it on inquiry as to another party's equity, either at the time of the purchase, or at or before, the time it paid the purchase money or otherwise parted with such value.**

(Emphasis added) (some alterations and omissions in original) (internal quotation marks, footnotes, and some citations omitted).

■ As to notice, we observed that "the relevant inquiry is whether the *bona fide* purchaser or lender has notice of an existing interest in the property when his or her own interest is *acquired.*" *Id.* at 399, 974 A.2d 376 (emphasis in original) (citation omitted). Stated otherwise, this Court has explained the concepts of notice and the bona fide purchaser as follows:

> We recently set forth the rule for determining whether a purchaser had notice of any prior equities or unrecorded interests that would preclude him from being entitled to protection as a *bona fide* purchaser. We said that if the purchaser " 'had knowledge of circumstances which ought ... to have put a person of ordinary prudence on inquiry, he will be presumed to have made such inquiry and will be charged with notice of all facts which such an investigation would in all probability have disclosed if it had been properly pursued.' "

*Howard Chertkof & Co. v. Gimbel,* 157 Md.App. 118, 140, 849 A.2d 1036 (2004) (omission in original) (citations omitted). "The standard for determining what facts suffice to 'excite inquiry' is 'notice of facts which would lead an ordinarily prudent [person] to make an examination.' " *Beins v. Oden,* 155 Md.App. 237, 244–45, 843 A.2d 147 (2004) (citation omitted) (This Court held that, as to an easement, it was "undisputed that the easement in question did, in fact, appear in the title abstract" and that appellants' attorney "failed to read the extract in its entirety and did not see the easement.").

In *Homan,* 186 Md.App. at 381, 403, 974 A.2d 376—a case involving a deed of trust and quitclaim deed that were not recorded in the land records until over eighteen months after the deed of trust was granted to the bank and over two months after the trial court ordered the home improvement company, in the original lawsuit, to convey the property to the buyers—we remanded to the trial court for consideration of the issue of whether or not the bank was a *"bona fide*

mortgagee or lender for value without notice[,]" as the record did not reflect whether the trial court had considered and decided the issue. In *Gimbel*, 157 Md.App. at 120, 140, 141–42, 849 A.2d 1036—a case involving "a real estate broker's entitlement to a commission in connection with a commercial lease"—this Court observed that the trial court erred in deciding that appellees were bona fide purchasers without first determining whether appellees "knew of the claim before the transfer of title" or whether "appellees were parties to the [a]greement[.]"

### (d) *Lis Pendens*

Maryland Rule 12–102 provides in relevant part:

(a) Scope. This Rule applies to an action filed in a [trial] court ... that affects title to ... real property located in this State.

(b) Creation—Constructive notice. In an action to which the doctrine of lis pendens applies, the filing of the complaint is constructive notice of the lis pendens as to real property in the county in which the complaint is filed. In any other county, there is constructive notice only after the party seeking the lis pendens files either a certified copy of the complaint or a notice giving rise to the lis pendens, with the clerk in the other county.

In *Weston*, 167 Md.App. at 30–31, 35–36, 891 A.2d 430, this Court explained the "general rule of lis pendens" and attachment of the doctrine of *lis pendens* as follows:

The general and established rule is ... that a lis pendens— a pending suit in equity—duly prosecuted, and not collusive, is notice to a purchaser of the property in dispute from a party to the litigation, so as to affect and bind his interest by the decree; and the lis pendens begins from the service of the subpoena after the bill is filed. Wherever, therefore, an equitable suit affecting the title to a particular estate as its subject-matter has been begun by service of process, and is prosecuted in good faith, whether we say that the lis pendens is constructive notice to all the world, or regard the doctrine as necessarily resting upon a basis of expediency,

the result is the same; an alienee of the subject-matter from either party during the pendency of the suit takes it subject to the rights of the other party involved in the controversy, and is bound by the decree or judgment finally rendered.

. . .

Because lis pendens is triggered by the initiation of litigation affecting the title to real property, ordinarily whether the plaintiff in that litigation has knowledge of the transfer of the property is not an issue. Thus, when, after the complaint has been filed, the defendant transfers his or her interest in the property which is the subject of the lawsuit, lis pendens applies to subject that property to the result of the pending litigation whether or not the plaintiff is aware of the transfer. . . . As we have seen, where the defendant's interest in the property is transferred prior to the initiation of the action affecting title to that property, lis pendens does not apply.

(First omission in original) (Citation and internal quotation marks omitted). In *DeShields v. Broadwater*, 338 Md. 422, 436, 659 A.2d 300 (1995), the Court of Appeals discussed *lis pendens* and the concept of the bona fide purchaser, stating: "[A] transferee's knowledge of the pendency of litigation affecting the property acquired may very well be quite important. Because lis pendens provides constructive notice of the equity claimed by the plaintiff, the transferee's actual notice of that equitable claim prevents that transferee from being a purchaser in good faith. Indeed, it has been said that one who purchases with notice of another's equity is a mala fide purchaser."

### (4) Analysis

■ Upon review of the record, "assum[ing] the truth of all of the well-pled facts" in the Order to Docket and attached exhibits, "and the reasonable inferences drawn from them, in a light most favorable to" appellees, we conclude that the circuit court erred in denying the Motion to Stay and Dismiss, as the Lender was not entitled to protection as a bona fide purchas-

er.[9] *120 W. Fayette St., LLLP*, 407 Md. at 261–62, 964 A.2d 662 (citation and internal quotation marks omitted). In the May 19, 2011, opinion, the circuit court correctly observed that the Lender's notice of the Estate Lawsuit was an issue that needed to be resolved in order to determine whether it was entitled to protection as a bona fide purchaser. Rather than addressing the issue of notice, the circuit court denied the Motion to Stay and Dismiss, stating: "Because the mortgagee bank's actual notice of the pending litigation or bad faith are disputed material fact, the Court will deny [appellant]'s Motion to Stay and Dismiss at this time."

In this case, the Lender is not entitled to the protection of a bona fide purchaser as, pursuant to Maryland Rule 12–102, it had constructive notice of the Estate Lawsuit and title issues clouding the Property at the time it acquired an interest in the Property. On January 3, 2008, the complaint in the Estate Lawsuit was filed with the circuit court. At that time, the provisions of Maryland Rule 12–102 concerning *lis pendens* became applicable, as the complaint was filed in the circuit court and affected title to real property located within the State. Pursuant to Maryland Rule 12–102(b), the filing of the complaint in the Estate Lawsuit created constructive notice [10] of the *lis pendens* as to the Property. There is no indication in the record that the circuit court terminated the *lis pendens* at any time prior to the litigation's completion. Thus, as of January 3, 2008, the filing of the complaint provided construc-

---

**9.** As to appellees' contention that the Motion to Stay and Dismiss failed to comply with the requirements of Maryland Rule 14–211(a)(3) in that it was not "under oath or supported by affidavit[,]" the record reflects that the circuit court did not address the issue. Although, pursuant to Maryland Rule 14–211, this deficiency is enough to warrant denial of the motion, given that the circuit court did not rule on the matter, we shall address this case's merits.

**10.** Black's Law Dictionary defines "constructive notice" as "[n]otice arising by presumption of law from the existence of facts and circumstances that a party had a duty to take notice of, such as a registered deed or a pending lawsuit; notice presumed by law to have been acquired by a person and thus imputed to that person." Black's Law Dictionary 1090 (8th ed.2004).

tive notice of the *lis pendens* as to the Property, and such notice existed on February 18, 2008, the date on which the Lender acquired an interest in the Property.

We are aware that Maryland appellate courts have not previously addressed directly the question of whether or not a lender charged with constructive notice pursuant to Maryland Rule 12–102(b) is a bona fide purchaser. In *Homan,* 186 Md.App. at 395, 974 A.2d 376, however, this Court unambiguously stated that a bona fide purchaser is one who takes "without notice or knowledge of any infirmity in the title of his [or her] vendor." (Citation omitted). This Court observed that lenders may be entitled to the protections available to bona fide purchasers where such lenders are without notice and otherwise meet the qualifications of being a bona fide purchaser. *See id.* at 396–97, 974 A.2d 376. As to notice and the bona fide purchaser, this Court held that "the relevant inquiry is whether the *bona fide* purchaser or lender has notice of an existing interest in the property when his or her own interest is *acquired.*" *Id.* at 399, 974 A.2d 376 (emphasis in original) (citation omitted).

As to the nature of the notice required, in *Gimbel,* 157 Md.App. at 140, 849 A.2d 1036, we stated that "if the purchaser had knowledge of circumstances which ought to have put a person of ordinary prudence on inquiry, he [or she] will be presumed to have made such inquiry and will be charged with notice of all facts which such an investigation would in all probability have disclosed if it had been properly pursued." (Citation and internal quotation marks omitted). In *Beins,* 155 Md.App. at 244, 843 A.2d 147, we explained "inquiry" as follows: "The standard for determining what facts suffice to 'excite inquiry' is 'notice of facts which would lead an ordinarily prudent [person] to make an examination.'" (Citation omitted). This precedent makes clear that notice is not confined to actual notice, but rather is much broader, and may encompass the constructive notice provided by *lis pendens.*

Although it is accurate, as appellees contend, that, in *Greenpoint Mortg. Funding, Inc. v. Schlossberg,* 390 Md. 211, 222,

888 A.2d 297 (2005), the Court of Appeals stated: *"Lis pendens* has no specific separate existence apart from its basic function to advise a person who seeks to acquire an interest in property subject to a *lis pendens* that he will be bound by the outcome of the noticed litigation[,]" the issue before the Court in that case was not whether or not constructive notice deprives a party of the protection to which a bona fide purchaser is entitled. In *Schlossberg, id.* at 251, 888 A.2d 297, the Court determined that *lis pendens* arising from a divorce case that had been filed under one spouse's name did not effectively provide notice where the property at issue was owned by the other spouse. The Court also held that *lis pendens* is not applicable in a divorce case unless the trial court specifically orders it to be applicable. *Id.* at 216 n. 1, 888 A.2d 297. The Court's statement as to the extent of the notice provided—that *lis pendens* provides notice only that a person is bound by the litigation's outcome—is *dicta.*

■ As to bona fide purchaser status, notice is assessed at the time that a party acquires an interest in the property. *See Julian,* 414 Md. at 663, 997 A.2d 104 (Bona fide assignee status is "determined at the time of the assignment."). In the instant case, at the time that the Lender acquired its interest in the Property, there was no court order providing that the Property be returned, encumbered or otherwise, to the Estate, *i.e.* the Estate litigation was unresolved. The Lender took the Property subject to constructive notice of the Estate litigation and, as such, does not qualify for the protection to which a bona fide purchaser is entitled. Indeed, as discussed *infra,* had the outcome of the case been that the 2007 Deed were voidable, such a finding would not have automatically entitled the Lender to the protection of a bona fide purchaser. In its ruling of March 15, 2010, the circuit court found neither that the 2007 deed was void *ab initio* nor voidable. Nor did the circuit court explicitly order that the Property be transferred back to the appellant encumbered by the lien. In determining appellees' right to proceed with the foreclosure action, the critical question is whether or not appellees are entitled to the protection accorded bona fide purchasers.

Although appellant argues that, in the Estate Lawsuit, the circuit court's ruling had "the effect of finding the [2007] Deed void *ab initio*," we do not reach the issue of whether or not the Estate Order rendered the 2007 Deed either void *ab initio* or voidable, as such a determination is not dispositive of whether or not the Lender is a bona fide purchaser and entitled the protection of that status. Had the 2007 Deed been found void *ab initio*, and even had the Lender qualified as a bona fide purchaser, appellees would not have prevailed. *See Matthews*, 417 Md. at 583, 11 A.3d 801 ("[A] person otherwise qualifying as a bona fide purchaser under the recording act receives no protection under a void deed." (Citation omitted).). As to the establishment of the constructive trust, we observe that, in cases where a constructive trust was established as a result of finding a confidential relationship, Maryland appellate courts have not held that the deeds in question were void *ab initio*, and we do not do so in the instant case. *See, e.g., Figgins*, 403 Md. 392, 942 A.2d 736; *Porter*, 195 Md.App. 361, 6 A.3d 372. If the 2007 Deed were voidable, appellees would not prevail unless the Lender was found to be a bona fide purchaser without notice. *See Harding*, 20 Md.App. at 214, 315 A.2d 132 ("[A] deed obtained through fraud, deceit or trickery is [not] voidable . . . as to a *bona fide* purchaser."); *Homan*, 186 Md.App. at 396, 974 A.2d 376 (By definition, a bona fide purchaser is without notice.). Accordingly, we address the Lender's status as a bona fide purchaser with or without notice and need not express an opinion as to whether or not the 2007 Deed is voidable.

We find unpersuasive appellees' reliance on *DeShields*, 338 Md. at 436, 659 A.2d 300, for the proposition that only actual notice, not constructive notice, may deprive a party of its status as a bona fide purchaser. In *DeShields, id.*, the Court of Appeals stated: "Because lis pendens provides constructive notice of the equity claimed by the plaintiff, the transferee's actual notice of that equitable claim prevents that transferee from being a purchaser in good faith." The Court merely observed that the purchaser had actual notice and was not a bona fide purchaser. The Court did not hold that only actual

notice, not constructive notice, can deprive a party of its status as a bona fide purchaser.

We see no reason to distinguish between actual and constructive notice for purposes of determining a party's status as a bona fide purchaser. Our conclusion is in line with case law from other states whose appellate courts have held that constructive notice under *lis pendens* deprives a party of its status as a bona fide purchaser. *See, e.g., Rolan v. Glass*, 305 Ga.App. 217, 699 S.E.2d 428, 431 (2010), *cert. denied*, 2011 Ga. LEXIS 30 (Ga.2011) (The Court of Appeals of Georgia held that, "as [the purchaser] had constructive notice of the lis pendens, she was not a bona fide purchaser[.]"); *Dyer v. Martinez*, 147 Cal.App.4th 1240, 1242, 54 Cal.Rptr.3d 907 (Cal.Ct.App.2007) (The Fourth Appellate District of the Court of Appeal of California held that a purchaser was a bona fide purchaser because—although a *lis pendens* had been filed— the recorder's office had not yet indexed the *lis pendens*, and, therefore, the purchaser lacked constructive notice.).

We also are unpersuaded by appellees' reliance on *G.E. Capital Mortgage Servs., Inc. v. Levenson*, 338 Md. 227, 234–37, 657 A.2d 1170 (1995), for the contention that the doctrine of equitable subrogation bars dismissal of the foreclosure action.[11] In *Levenson, id.* at 231–32, 657 A.2d 1170, the Court of Appeals stated:

---

11. We are aware that, in this case, at the hearing on the Motion to Stay and Dismiss, counsel for the Estate made the following statement: "We would be willing to give to [the Lender] the $59,000.00 and [] we would then take the rest, the difference between fifty-nine and the sale price, because it is just inequitable in this situation at this time to do anything else[.]" Counsel for the Lender did not respond to the statement during the hearing. Counsel for the Estate's willingness to satisfy the debt is not dispositive as to the issue of whether or not the doctrine of equitable subrogation bars dismissal of the foreclosure action. At the hearing, the circuit court specifically asked appellees whether equitable subrogation provided the right to "collect that money" or whether the doctrine would "give [appellees] entitlement to enforce all of the terms of the instrument as if the instrument were still in effect[.]" Appellees' counsel responded that the doctrine of equitable subrogation gave them the right to enforce the instrument, and argued that the circumstances of the case were the same as those presented in

Where a lender has advanced money for the purpose of discharging a prior encumbrance in reliance upon obtaining security equivalent to the discharged lien, and his money is so used, the majority and preferable rule is that if he did so in ignorance of junior liens or other interests he will be subrogated to the prior lien. Although stressed in some cases as an objection to relief, neither negligence nor constructive notice should be material.

(Citation and internal quotation marks omitted). The holding of the Court of Appeals in *Levenson* predates this Court's holdings as to notice in *Homan, Gimbel,* and *Beins.* Significantly, *Levenson,* 338 Md. at 227, 657 A.2d 1170, is a post-foreclosure sale case in which the refinance lender purchased the property at foreclosure. The holding of the Court of Appeals addressed two questions, both of which involved the foreclosure sale.[12] *Id.* at 237, 657 A.2d 1170. In *Levenson, id.* at 233, 235, 657 A.2d 1170, after the foreclosure sale had been ratified, Levenson, a creditor, filed a petition in the foreclosure action seeking a determination that his three previously obtained confessed judgments had priority over the lender's deed of trust. G.E. Capital Mortgage Services, the lender, had refinanced an existing deed of trust and successfully bid for the property at the foreclosure sale. *Id.* at 234–35, 657 A.2d 1170. The Court of Appeals held, *inter alia,* that the creditor's "actual knowledge in advance of the foreclosure sale that the sale would be held, his opportunity to bid, and his

---

*Levenson.* Concluding that the Lender is not a bona fide purchaser, we disagree.

**12.** In *Levenson,* 338 Md. at 237, 657 A.2d 1170, the Court of Appeals stated that the petition for certiorari raised the following two questions: (1) "[W]hether [ ] intervening judgment liens are extinguished when the amount bid at the foreclosure sale does not exceed the portion of the debt entitled to be equitably subrogated to the first priority position of the refinanced deed[.]" (2) "[W]hether the right to equitable subrogation to the priority position of a refinanced deed of trust must be established prior to the foreclosure sale in a power of sale foreclosure either by declaratory judgment or ruling in the foreclosure case if the foreclosure is to extinguish an intervening judgment[.]" (Internal quotation marks omitted).

opportunity to litigate the applicability of equitable subrogation before distribution of the sale proceeds fully satisfied the requirements of due process under the facts of this case." *Id.* at 246–47, 657 A.2d 1170. Read appropriately, *Levenson* applies to refinance lenders who, after a foreclosure sale, obtain a position of priority for a refinanced deed of trust over other judgment holders. *Levenson* is not dispositive where, as here, a refinance lender invokes the doctrine of equitable subrogation prior to the foreclosure sale, against a party, such as appellant, who claims to have been wrongfully deprived of title.[13]

In the instant case, on February 18, 2008—over a month after the filing of the complaint in the Estate Lawsuit—Street executed the Street Deed of Trust in the Lender's favor. At that time, pursuant to the doctrine of *lis pendens*, the Lender was on constructive notice that title to the Property was in question, and that Street may have obtained the Property through means of a breach of a confidential relationship, undue influence, and fraud. Constructive notice is "presumed by law to have been acquired by a person and is thus imputed to that person." Black's Law Dictionary 1090 (8th ed.2004). Despite the constructive notice, however, the Lender extended the Deed of Trust to Street for execution. Applying the guidance set forth in *Gimbel* and *Beins*—that the contemplated notice exceeds the circumstance of actual notice—we hold that, because the Lender had constructive notice of the Estate Lawsuit pursuant to Maryland Rule 12–102(b) at the time it acquired an interest in the Property, it was not entitled to the protections to which a bona fide purchaser is entitled, and was not entitled to foreclose on the Property. In sum, the *lis pendens* provided constructive notice, at the time the mort-

---

**13.** Even if we were to find that *Levenson* applies, at a minimum, we would remand to explore the Lender's knowledge of the *lis pendens*. *See Levenson,* 338 Md. at 238, 657 A.2d 1170 ("'[O]ne[ ] advancing money to discharge a prior lien on real or personal property and taking a new mortgage as security, is held to be entitled to subrogation to the prior lien as against the holder of an intervening lien of which he was **excusably ignorant.**" (Emphasis added)).

gage was acquired, of the existing interest in the Property, thereby precluding the Lender from protection as a bona fide purchaser.

■ In addition to constructive notice provided by *lis pendens*, appellant contends that the Lender would have gained notice of the existence of the Estate Lawsuit by the title search conducted before settlement or recordation of the Street Deed of Trust on April 2, 2008, and that the Lender had actual, or at a minimum, inquiry notice of the matter. Although the Lender's actual notice of the Estate Lawsuit may be a disputed material fact between the parties, as explained above, whether or not the Lender had actual notice of the Estate Lawsuit is not dispositive of the determination of the Lender's status as a bona fide purchaser. The existence of actual notice or, indeed, the Lender's knowledge of circumstances "which would lead an ordinarily prudent [person] to make an examination[,]" *Beins*, 155 Md.App. at 244, 843 A.2d 147, are interesting questions that we need not have the circuit court answer. The record makes clear that the Estate Lawsuit-filed on January 3, 2008—created constructive notice pursuant to Maryland Rule 12–102(b) of the existence of the Estate's claims. At the time the Lender gained an interest in the Property, it was "presumed by law" to have had notice of appellant's claim of ownership.[14]

For all of the reasons stated above, the circuit court erred in finding that the Lender's actual notice was a disputed material fact that prevented granting the motion to dismiss.

---

14. On appeal, appellees contend that the doctrine of "unclean hands" bars dismissal. Appellees did not raise this argument in its Opposition to [Appellant's] Motion to Stay and Dismiss, or while arguing orally before the circuit court. (Although appellees mentioned the "unclean hands" doctrine, they did so only to argue that unclean hands did not bar the foreclosure action, not to argue that appellant's alleged unclean hands barred dismissal.) "Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court[.]" Md. R. 8–131(a). Because appellees did not raise any issue as to the "unclean hands" doctrine as a bar to dismissal in the circuit court, we do not address the doctrine.

Pursuant to Maryland Rule 14–211(e), "if the [circuit] court finds that the moving party has established that the lien or the lien instrument is invalid or that the plaintiff has no right to foreclose in the pending action, it shall grant the motion and, unless it finds good cause to the contrary, dismiss the foreclosure action." As the record demonstrates that: (1) the Lender is not entitled to protection as a bona fide purchaser for value, and (2) there is no indication of "good cause to the contrary" prohibiting dismissal of the foreclosure action, we reverse the judgment of the circuit court.

**JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY REVERSED. CASE REMANDED WITH INSTRUCTIONS TO GRANT THE MOTION TO DISMISS. COSTS TO BE PAID BY APPELLEES.**